IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD SINGLETON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:11-cv-1431 |
| v. ) | |
| ) | Chief Judge Gary L. Lancaster |
| PITTSBURGH BOARD OF EDUCATION, ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| *et al.*, ) | |
| ) | ECF No. 29 |
| Defendants. ) | |
| ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) by Defendant Michelle Miller-Kotula (ECF No. 29) be granted.

## II. REPORT

This civil rights action arises out of grievance and arbitration proceedings held with regard to Plaintiff's termination as a police officer for the Pittsburgh School District. Plaintiff, Gerald Singleton, who is proceeding in this matter *pro se,* appears to be raising a due process violation under the 14th Amendment with regard to the manner in which his *Loudermill* hearing and subsequent arbitration were handled, as well as a conspiracy to deprive him of his due process rights. In addition, Plaintiff asks this Court to overturn the arbitrator's ruling and to order his reinstatement as well as back pay and other damages.

The Defendants in this action consist of the Pittsburgh Board of Education ("Board") for the Pittsburgh School District, the Pittsburgh Federation of Teachers ("Union" or "PFT"), the

attorney for the union, John Bacharach, Esquire, the then-president of the Union, John Tarka, union representative, William Heilman, the arbitrator, Michelle Miller-Kotula, several co-workers/police officers: Dante Borgini, Latisha Cassidy McClelland, Kenneth Scott, and Margaret Seig, his immediate supervisor and School Safety Chief, Robert Fadzen, the Human Resources Director for the District, Jody Spolar, and the attorney representing the Board at the proceedings, Paul Lalley, Esquire. All of the Defendants have moved to dismiss this action in five separate motions which are presently before the Court for disposition.

This report and recommendation addresses the motion to dismiss (ECF No. 29) filed by Defendant Miller-Kotula. For the reasons set forth below, the Court recommends that Defendant Miller-Kotula's motion to dismiss be granted.

A.  **Relevant Facts**

For purposes of the motion to dismiss, the Court must accept all well-pleaded facts in the Amended Complaint as true.

Gerald Singleton was hired in 1993 as a school security guard for the Pittsburgh School District. (Compl. at ¶4, ECF No. 1.) As such, Singleton was covered under the collective bargaining agreement (the "CBA") between the Board and the Union. (*Id.*) Singleton was promoted to school police officer in 1997 and maintained his position until May 27, 2010, when Singleton was terminated after he was observed by his coworkers as being in possession of a handgun the District's Ridge Avenue Parking facility on February 12, 2010. (Compl. at ¶¶4-11.)

On February 12, 2010, despite a severe snow storm which caused school to be cancelled, Singleton reported to work at the Board's Ridge Avenue parking facility on the North Side of Pittsburgh where he and several school police officers were scheduled to have new radios installed in their school vehicles. (Compl. at ¶5.) The Ridge Avenue parking facility is owned by

the Board but is not used for educational purposes and no students report there; the facility is used for storage, Pittsburgh Police SWAT team training, and vehicle parking. (Compl. at ¶¶5 & 10.) On that day, Singleton agreed to use his personal vehicle in an attempt to haul a police vehicle from a snow drift in the presence of fellow school police officers Dante Borgini, Latisha Cassidy McClelland, and Margret Seig. (Compl at ¶5.) While attempting to haul the police vehicle from the snow drift, Singleton's personal firearm fell beneath the brake pedal of his vehicle from below his seat. (Compl. at ¶6.) As Singleton was placing the firearm on his vehicle's console, the other officers saw the firearm, resulting in a verbal exchange. Seig began calling Singleton "stupid" and "asshole" in front of the other officers, to which Singleton replied by calling Seig a "fat bitch." Borgini and McClelland walked away, laughing at the exchange. Singleton then left the Ridge Avenue parking facility and drove to downtown Pittsburgh, where his personal vehicle ran out of gas. (*Id.*)

After Singleton left, Seig called School Safety Commander Kenneth Scott to report Singleton for having a firearm in his personal vehicle, who in turn called School Safety Chief Robert Fadzen. (*Id.*) While parked downtown, Singleton was contacted by school dispatch and told to remain at that location until Fadzen arrived. (Compl. at ¶7.) Upon arriving, Fadzen advised Singleton that he was going to be charged with the crime of possessing a weapon on school grounds, instructed him to relinquish his firearm, which was loaded, and to report to the school board administration building. (*Id.*) When he arrived at the administration building, Singleton was given a suspension letter effective February 12, 2010. (*Id.*)

Singleton reported to the Union to seek assistance in filing a grievance and was assigned William Heilman as a union representative. (*Id.*) Heilman allegedly told Singleton that he could not obtain his own attorney and was required to follow the Union's grievance process. (*Id.*)

3

On February 26, 2010, a *Loudermill*[1] hearing regarding Singleton's suspension was held, which was attended by Singleton, Heilman, Fadzen, and Attorney Paul Lalley representing Fadzen. (Compl. at ¶8.) The Board's Human Resources Director, Judy Spolar, was seated in the hallway during the *Loudermill* hearing. (*Id.*) At the *Loudermill* hearing, Fadzen stated that his reason for recommending Singleton's termination was for possessing a weapon on school property. (*Id.*) Following the *Loudermill* hearing, Singleton attempted to contact the Union's then President, John Tarka, as well as members of the Board and superintendent Mark Roosevelt, through correspondence. (Compl. at ¶9.) Although Singleton did not receive any response from these individuals, Spolar acknowledged his attempts to contact various Board members and informed him in correspondence dated 4/7/10 that it was in his best interest to cease and desist immediately from such attempts. (Ex. H attached to Compl., ECF No. 1-8.)

Thereafter, Spolar notified Singleton, in correspondence dated March 22, 2010, that his actions on 2/12/10 could result in him being charged with a crime under Section 912 of the Crimes Code (possessing a weapon on school property), and that he would serve an unpaid, five-day suspension from March 24 through March 30, 2010. (Compl. at ¶10; Ex F attached to Compl., ECF No. 1-7.) In the March 22nd correspondence, Spolar described the events of February 12, 2010 in the following manner: "After you had freed the other vehicle from the

---

[1] A *Loudermill* hearing refers to the Supreme Court's decision in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), in which the court held that in the context of a constitutionally protected property interest in continued employment, due process requires "some kind of a hearing" prior to the employee's discharge. *Id.* at 542 (citing *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 569-70 (1972)). The Supreme Court explained what was required at this pretermination hearing:
> "[S]omething less" that a full evidentiary hearing is sufficient prior to adverse administrative action. . . . The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

*Id.* at 546 (internal citations omitted).

snow and had stopped your vehicle, you were observed picking up a gun and holding it in a manner that allowed the other officers to see your possession of the gun within the car." (Compl. at ¶10; Ex. F attached to Compl.) On March 30, 2010, Singleton was notified by Spolar that his five-day suspension was being converted to a recommendation for termination at the April Legislative meeting of the Board. (Ex. G attached to Compl., ECF No. 1-8.)

Subsequently, Singleton, through his union representative, Heilman, filed a grievance and requested an arbitration hearing. (Compl. at ¶12; Ex. D at 2 & Ex. H attached to Compl.) Singleton was informed by Spolar in correspondence dated 4/7/10 that he would have the opportunity to present any relevant information regarding his proposed termination for the consideration of the arbitrator. (Ex. H attached to Compl.)

The Union also assisted Singleton with the appeal of the denial of his application for unemployment compensation. (Compl. at ¶10.) On April 16, 2010, PFT attorney Bacharach represented Singleton at the unemployment compensation appeal hearing, which was also attended by Fazden. (Compl. at ¶11.) Fazden is alleged to have stated at that hearing that Singleton was terminated for just cause for "possessing a weapon on school property," and produced a copy of the current school policy regarding firearms at school events. (*Id.*) This appeal was also denied based on his termination for just cause, and Bacharach did not appeal the ruling to the Unemployment Compensation Board of Review. (*Id.*) However, Bacharach did provide Singleton with a copy of the transcript of the unemployment compensation hearing, albeit an incomplete one. (*Id.*)

5

At a meeting held on May 26, 2010, the Board terminated Singleton's employment, effective May 27, 2010. (Correspondence from Frank Chester dated 6/21/10, Ex. I attached to Compl., ECF No. 1-8.)[2]

Arbitration proceedings were conducted by Michelle Miller-Kotula on August 16, 2010 and September 1, 2010[3] with Singleton represented by Defendant Bacharach, and the Board represented by Defendant Lalley. (Compl. at ¶12; Arbitrator's Opinion & Award ("Arb. Op."), Ex. D attached to Compl., ECF No. 1-5.) During the arbitration hearing, the parties were permitted to present evidence, both oral and written, to examine and cross-examine witnesses who were sworn and sequestered, and to argue their respective positions. (Arb. Op. at 2.) Specifically, Borgini, McClelland, Seig, and Fadzen testified, as did Singleton. (Compl. at ¶12; Arb. Op. at 3-19.) Singleton alleges that at the arbitration hearing, Fadzen changed the reason for recommending his termination, that being that Singleton pointed his firearm at fellow officers, threatened them, and that they were frightened for their lives. (Compl. at ¶12.) Singleton also contends that by allowing new information and testimony of witnesses to be admitted for the first time at the arbitration hearing, the arbitrator violated the CBA. (*Id.*)

Following receipt of the transcript from the deposition on 9/1/10, the parties filed post-hearing briefs on October 4, 2010, at which time the arbitration record was closed. (Arb. Op. at 2.) Singleton called Bacharach several times regarding the status of the decision and was advised

---

[2] Although Singleton attached the Chester 6/21/10 letter to his Complaint, he nonetheless alleges that he received a letter dated June 7, 2010 stating he was fired for possessing a weapon on school property. (Compl. at ¶11.) It appears that Singleton may be referring to the Spolar letter dated 4/7/10 (attached to the Complaint as Exhibit H), as there is no letter dated 6/7/10 attached to the Complaint or found elsewhere in the record.

[3] It appears that on 9/1/10, a deposition was held, at which the arbitrator was not present. (Arb. Op. at 2; Pl.'s Resp. to Def. Miller-Kotula's Mot. to Dismiss at ¶10, ECF No. 54.) Also, Plaintiff states in his Complaint that the dates of the arbitration were August 16, *2011*, and September 1, *2011*. This appears to be an inadvertent typographical error.

that it could take several months to receive a decision. (Compl. at ¶13.) On November 4, 2010, Miller-Kotula issued her Opinion and Award, in which she denied the Union's grievance and found that the Board had "just cause" to terminate Singleton's employment based on his violation of the Board's policy prohibiting the possession of guns on Board property. (Compl. at ¶13; Arb. Op. at 32-34.)

The Union declined to appeal the arbitrator's award on Singleon's behalf. Consequently, on December 6, 2010, Singleton filed *pro se* a Petition to Vacate the Arbitrator's Decision in the Court of Common Pleas of Allegheny County ("Common Pleas Court"). (Docket No. GD 10-22763; Pet.'s Resp. Br. ("Pet.'s Br."), Ex. C attached to Compl., ECF No. 1-3.) Singleton named as respondents two of the Defendants, Robert Fadzen and the Board. (*Id.*) On May 23, 2011, the Common Pleas Court quashed Singleton's petition for lack of standing. (Order dated 5/23/11 by Judge Robert Colville ("Colville Order"), Ex B attached to Compl., ECF No. 1-2.)

Thereafter, Plaintiff instituted the present action in this Court on November 9, 2011. On February 14, 2012, Defendant Miller-Kotula filed a motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to which Plaintiff filed a response and brief in opposition on March 30, 2012. This motion has been fully briefed and thus is ripe for disposition.

B. **Legal Standard – Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-

46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57). The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim. First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint. *Fowler,* 578 F.3d at 210-11. Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate that the plaintiff has a "plausible claim for relief." *Id*. at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id*. (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, attached exhibits, and

matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688).

### C.  Discussion

Defendant Miller-Kotula raises three arguments in support of her motion to dismiss, however, the Court need only address her first argument—that she is absolutely immune from liability—as it is dispositive of all claims against her. Miller-Kotula argues that because the allegations set forth against her in the Complaint are directed at the performance of her duties as the duly appointed arbitrator over the grievance filed on Plaintiff's behalf by the Union, she was acting in a quasi-judicial capacity, and thus, is immune from civil liability for all acts done in her capacity as an arbitrator.

In support of her argument, Miller-Kotula relies primarily on the court of appeals decision in *Cahn v. International Ladies' Garment Union,* 311 F.2d 113 (3d Cir. 1962). In that case, the principle stockholders of a women's clothing manufacturer brought suit against, *inter alia*, the arbitrator of a dispute arising between the manufacturer and the garment workers' union for alleged violations of federal antitrust law. The complaint in *Cahn* alleged that the arbitrator used his office "'as an instrument of force and coercion to compel [the stockholders] unlawfully to adhere to and maintain contract provisions, customs and practices[,]'" and that the defendants "'procure[d] and arrange[d] for the Impartial [arbitrator] to inflict heavy fines and penalties on Plaintiffs and others in order to prevent Plaintiffs and others from operating freely and economically in the market place.'" 311 F.2d at 114 (quoting from paragraphs (i) and (j) in the complaint). The court of appeals found that these allegations were "based upon the conduct of the arbitrator in his capacity as an arbitrator[.]" *Id.* The court of appeals went on to hold "that in so functioning [the arbitrator] was performing quasi-judicial duties and was '. . . clothed with an immunity, analogous to judicial immunity, against actions brought by either of the parties arising out of the performance of his duties.'" *Id.* at 114-15 (quoting district court op., 203 F.Supp. 191, 194 (E.D.Pa. 1962)) (citations omitted).

In his brief in opposition, Plaintiff does not respond directly to Miller-Kotula's argument, but rather, reiterates many of the same factual allegations set forth in his Complaint. However, those factual allegations suggest that Miller-Kotula's alleged actions were taken in her capacity as an arbitrator. Specifically, with regard to Miller-Kotula, the Complaint alleges:

- On 8/16/10 and 9/1/10 . . . fraudulent arbitration proceedings were conducted before Michelle Miller-Kotula.

- Miller-Kotula is not an attorney or associated with the American Arbitration Association as the collective

- bargaining agreement stated but is a contract negotiator with relatively little experience and success rate.

- Miller-Kotula is rather a friend and associated with the law firm of Paul Lalley.

- Miller-Kotula allowed new information and witnesses that had never been previously admitted at any point during the grievance process in violation of the collective bargaining agreement.

- Mr. Fazden conspired with Attorney John Bacharach, Paul Lalley, William Heilman, Michelle Miller-Kotula and three school officers to terminate Plaintiff without cause through conspiracy and a fraudulent arbitration process.

Compl. at ¶ 12. The Complaint further alleges that the arbitration decision, dated 11/4/10, was received by Plaintiff on 11/9/10, was not signed by a panel of arbitrators, did not contain an official seal or any contact information for any of the parties involved, including the court reporter or the arbitrator, and was clearly written in haste, *id.* at ¶13, and that some of the Defendants, including Miller-Kotula, participated in the arbitration proceedings to intentionally present false statements against him, *id.* at ¶15. Looking only at the factual allegations contained in the above allegations,[4] the Court finds that they are all based on the conduct of Miller-Kotula acting in her capacity as an arbitrator. Plaintiff also alleges that the selection of the arbitrator was not done in conformance with the CBA. (Compl. at ¶16.) However, Plaintiff does not allege that Miller-Kotula was involved in any way in the selection process.[5]

---

[4] In ruling on a motion to dismiss under Rule 12(b)(6), the Court is not required to consider any conclusory allegations in the Complaint, such as "fraudulent arbitration proceedings were conducted," or that Defendants "conspired . . . to terminate Plaintiff without cause through conspiracy and a fraudulent arbitration process." *See Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555); *Fowler,* 578 F.3d at 210-11.

[5] Moreover, even if the Court accepts as true the allegation that the arbitrator was not selected in conformance with the CBA, this allegation does not establish a violation of Plaintiff's due process rights, but rather, suggests that the procedures set forth in the CBA were not followed, and thus, requires an interpretation of the CBA, which is governed by the Public Employe Relations Act, 43 P.S. §1101.101 *et seq.*, in particular, §1101.903. *See Waklet-Riker v. Sayre Area Educ. Ass'n,* 656 A.2d 138, 140-41 (Pa.

Miller-Kotula is also implicated in Plaintiff's third cause of action in Count C of the Complaint, which is entitled "The Arbitrator's decision fails to draw its essence from the party's collective bargaining agreement imposing her own brand of justice." In this cause of action, the allegations against Miller-Kotula are set forth primarily in Paragraph 18, and state, in essence, that she ignored certain provisions in Article 8, §§ 12 and 13 of the CBA[6] and allowed documents back-dated to February 10, 2010 and new witnesses to testify presenting a new reason for termination and a new chain of events that occurred on February 12, 2010, which was not the basis for the school board's decision to terminate Plaintiff. (Compl. at ¶18.) Plaintiff also alleges that he was not notified of the witnesses and specific charges of threatening fellow officers with a firearm, presented for the first time at the arbitration hearing, nor was he permitted to rebut his adversary's evidence and arguments when Defendants changed the reason for termination at the arbitration hearing. (*Id.*) Again, these allegations all involve conduct of Miller-Kotula acting in her capacity as an arbitrator. As such, she was acting in a quasi-judicial capacity and thus, is entitled to immunity.[7]

It is well settled that a "judge cannot be sued civilly for any act which he does in the performance of his duties, even if the act was deliberate and malicious." *Cahn,* 203 F.Supp. at

---

Super. Ct. 1995); *Runski v. Am. Federation of State, County & Municipal Employees,* 598 A.2d 347, 349-50 (Pa. Commw. Ct. 1991).

[6] Plaintiff contends that Article 8, §§ 12 & 13 of the CBA provide "No argument or fact may be introduced at an arbitration proceeding unless they have been presented at some previous level of this grievance procedure or unless they were not reasonably available to the parties prior to the arbitration. An arbitrator shall not render any decision which conflicts with or alters this agreement." *See* Compl. at ¶18. The CBA has not been made part of the record in this case by any of the parties.

[7] This Court lacks jurisdiction to reach the merits of Plaintiff's claim in Count C, that the "arbitrator's decision fails to draw its essence from the party's collective bargaining agreement imposing her own brand of justice," because in local public employment disputes, the courts of common pleas have exclusive jurisdiction to review an arbitrator's award. *Scranton Sch. Dist. v. Scranton Federation of Teachers, Local 1147, AFT,* 402 A.2d 1091, 1093 (Pa. Commw. Ct. 1979) (citing Pa. R. Civ. P. 247, rescinded and now contained in 42 Pa. Cons. Stat. Ann. §933(b), effective June 27, 1978). Therefore, this Court cannot vacate the arbitrator's decision and/or order Plaintiff's reinstatement.

193 (citing *Bradley v. Fisher,* 80 U.S. 335, 347 (1872); *Allen v. Biggs,* 62 F.Supp. 229, 230 (E.D.Pa. 1945). The rationale for this precept is that "impos[ing] civil liability on judges in the performance of their civil duties would produce utter chaos in the judicial system." *Id.* (citing *Ginsberg v. Stern*, 125 F.Supp. 596, 602 (W.D.Pa.1954), *aff'd on other grounds*, 225 F.2d 245 (3rd Cir.1955)). The district court in *Cahn* observed that "[t]his rule of immunity extends to quasijudicial officials and those so closely associated with the judicial process that their protection from harassment is necessary in order to protect the judicial process." *Id.* (citing *Cooper v. O'Connor*, 99 F.2d 135, 141 (D.C.Cir.1938); *Hohensee v. Goon Squad*, 171 F.Supp. 562, 568-69 (M.D.Pa.1959)).

Plaintiff has not submitted any argument[8] or legal authority[9] that would dissuade this Court from extending immunity to Miller-Kotula. In his response and brief in opposition to Miller-Kotula's motion to dismiss, Plaintiff focuses on evidence he presented at the arbitration

---

[8] Plaintiff's arguments that (1) the decision of the arbitrator was "completely irrational as it fails to draw its essence from the CBA" (Pl.'s Br. at ¶¶ 11, 15), (2) Miller-Kotula's conduct showed evident partiality and corruption and/or gave rise to a reasonable impression of partiality towards Defendants (Pl.'s Br., Conclusion), and (3) Miller-Kotula manifested a blatant disregard of the law (*id.*), all go to Miller-Kotula's conduct when acting in her capacity as an arbitrator. Thus, Plaintiff's reliance on *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Personnel Ass'n, PSEA/NEA,* 939 A.2d 855 (Pa. 2007) is misplaced, as the proposition for which it is cited actually supports the finding that the cause of action set forth in Count C of the Complaint derives from actions she took in her capacity as an arbitrator.

[9] This Court is only bound by decisions of the United States Supreme Court and the U. S. Court of Appeals for the Third Circuit as to claims involving federal law, and if a state law claim is presented, only decisions of the Pennsylvania Supreme Court are binding. With one exception, all of the cases cited by Plaintiff are from state courts other than Pennsylvania and courts of appeals other than the Third Circuit. In addition, *Stead Motors of Walnut Creek v. Auto Machinists Lodge No. 1173,* 886 F.2d 1200 (9th Cir. 1989) (en banc) is inapposite as it involved an action to vacate an arbitration award under the Labor Management Relations Act, 29 U.S.C. §185, which does not apply to the case at bar. The other cases cited by Plaintiff are also inapposite as the decisions in those cases rely on the interpretation of federal or state statutes not applicable to the case at bar. *See, e.g., Comedy Club, Inc. v. Improv West Assocs.,* 553 F.3d 1277 (9th Cir. 20009) (applying Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*); *Bosack v. Soward ,* 586 F.3d 1096 (9th Cir. 2009) (applying FAA); *Remny v. Port Huron Hosp.,* 398 N.W.2d 327 (Mich. 1986) (applying Michigan arbitration statute and common law); *Ritchie v. Mich. Consolidated Gas Co.,* 413 N.W. 2d 796 (Mich. App. 1987) (applying Michigan law). Plaintiff's reference to the FAA in paragraph 11 of his brief is misplaced, as the FAA only applies to arbitration provisions in commercial

regarding disparate treatment for similar violations by co-workers, which he claims the arbitrator failed to consider. (Pl.'s Resp. to Mot. to Dismiss at ¶8, ECF No. 54 at 3; Pl.'s Br. in Opp'n at ¶7, ECF No. 55 at 4.) Plaintiff also focuses on the presentation of new evidence and witnesses at the arbitration allegedly in violation of the CBA. (Pl.'s Resp. to Mot. to Dismiss at ¶6, ECF No. 54 at 3; Pl.'s Br. in Opp'n at ¶¶4 & 8, ECF No. 55 at 3-4.) Plaintiff also reiterates that he was not charged with a crime, he lawfully possessed a firearm, and was not on school grounds as defined by law. (Pl.'s Resp. to Mot. to Dismiss at¶7, ECF No. 54 at 3; Pl.'s Br. in Opp'n at ¶¶6 & 10, ECF No. 55 at 3-5.) In essence, all of these arguments are challenging the result reached by the arbitrator. *See also* Pl.'s Br. in Opp'n at ¶5, ECF No. 55 at 3.

As it appears in the present case that Miller-Kotula was acting in her capacity as an arbitrator at all relevant times, she is entitled to immunity from civil liability for the actions and/or claims Plaintiff alleges against her in his Complaint. Accordingly, the Court recommends that the motion to dismiss filed by Miller-Kotula be granted with prejudice.[10]

### D. Conclusion

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendant Miller-Kotula (ECF No. 29) be granted with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the

---

agreements and not to collective bargaining agreements. *See* 9 U.S.C. §§1-2.

[10] This Court recognizes that the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See* Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). In light of this Court's conclusion that Miller-Kotula is immune from civil liability in this case, it would be futile to allow Plaintiff to amend his Complaint. Accordingly, this Court is recommending that the action be dismissed with prejudice.

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections will constitute a waiver of any appellate rights.

August 13, 2012                    BY THE COURT:


   /s/ Lisa Pupo Lenihan
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All Counsel of Record
         *Via Electronic Mail*

         Gerald Singleton, *Pro Se Plaintiff*
         5514 Stanton Ave., #4
         Pittsburgh, PA 15206
         *Via First Class, U.S. Mail*