IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GERALD SINGLETON, )
)
Plaintiff, )
) Civil Action No. 2:11-cv-1431
v. )
) Chief Judge Gary L. Lancaster
PITTSBURGH BOARD OF EDUCATION, ) Chief Magistrate Judge Lisa Pupo Lenihan
*et al.,* )
) ECF No. 32
Defendants. )
)

# REPORT AND RECOMMENDATION

## I.   RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) by Defendants Pittsburgh Federation of Teachers, John Tarka, John Bacharach, Esquire, and William Heilman (ECF No. 32) be granted.

## II.   REPORT

This civil rights action arises out of grievance and arbitration proceedings held with regard to Plaintiff's termination as a police officer for the Pittsburgh School District. Plaintiff, Gerald Singleton, who is proceeding in this matter *pro se,* appears to be raising a due process violation under the Fourteenth Amendment with regard to the manner in which his *Loudermill* hearing and subsequent arbitration were handled, as well as a conspiracy to deprive him of his due process rights. As relief, Plaintiff asks this Court to overturn the arbitrator's ruling and to order his reinstatement as well as back pay and other damages.

The Defendants in this action consist of the Pittsburgh Board of Education ("Board") for

the Pittsburgh School District, the Pittsburgh Federation of Teachers ("PFT" or "Union"), the attorney for the PFT, John Bacharach, Esquire, the then-president of the PFT, John Tarka, Plaintiff's union representative, William Heilman, the Arbitrator, Michelle Miller-Kotula, several co-workers/police officers: Dante Borgini, Latisha Cassidy McClelland, Kenneth Scott, and Margaret Seig, his immediate supervisor and School Safety Chief, Robert Fadzen, the Human Resources Director for the District, Jody Spolar, and the attorney representing the Board at the proceedings, Paul Lalley, Esquire. All of the Defendants have moved to dismiss this action in five separate motions which are presently before the Court for disposition.

This report and recommendation addresses the motion to dismiss (ECF No. 32) filed by the PFT, John Tarka, and William Heilman (collectively, the "Union Defendants"), and John Bacharach, Esquire ("Attorney Bacharach"). For the reasons set forth below, the Court recommends that the motion to dismiss filed by the Union Defendants and Attorney Bacharach be granted.

### A. **Relevant Facts & Procedural History**

The relevant facts and procedural history have been set forth at length in this Court's Report and Recommendation dated August 13, 2012 regarding Defendant Miller-Kotula's motion to dismiss and will not be reiterated here. *See* ECF No. 64 at 2-7. Only those factual allegations pertaining to the claims against the Union Defendants and Attorney Bacharach are presented below.[1]

After Singleton reported to the school board administration building on February 12, 2010 where he was presented with the suspension letter, he requested assistance from the Union in filing a grievance. (Compl. ¶7, ECF No. 1.) PFT representative William Heilman was assigned

---

[1] For purposes of the motion to dismiss, the Court must accept all well-pleaded facts in the Complaint as true.

to assist Singleton in this regard. (*Id.*) Heilman allegedly told Singleton that he could not obtain his own attorney and was required to follow the Union's grievance process. (*Id.*)

Heilman attended the *Loudermill* hearing[2] on February 26, 2010 with Singleton, which was also attended by Fadzen and Attorney Paul Lalley. (Compl. ¶8.) Following the *Loudermill* hearing, Singleton attempted to contact the Union's then President, John Tarka, but received no response. (Compl. ¶9.) After Singleton was notified on March 30, 2010 by Spolar that his five-day suspension was being converted to a recommendation for termination, Heilman filed a grievance on behalf of Singleton and requested an arbitration hearing. (Compl. ¶12; Ex. D at 2 & Ex. H attached to Compl.)

The Union also assisted Singleton with the appeal of the denial of his application for unemployment compensation. (Compl. ¶10.) On April 16, 2010, Attorney Bacharach represented Singleton at the unemployment compensation appeal hearing. (Compl. ¶11.) This appeal was also denied based on the Board's termination of his employment for just cause, and Attorney Bacharach did not appeal the ruling to the Unemployment Compensation Board of Review. (*Id.*) However, Attorney Bacharach did provide Singleton with a copy of the transcript of the unemployment compensation hearing, albeit an incomplete one. (*Id.*)

Arbitration proceedings were conducted by Michelle Miller-Kotula on August 16, 2010 and September 1, 2010[3] with Singleton represented by Attorney Bacharach, and the Board represented by Attorney Lalley. (Compl. ¶12; Arbitrator's Opinion & Award ("Arb. Op."), Ex. D attached to Compl., ECF No. 1-5.) Plaintiff contends that Attorney Bacharach and Heilman were

---

[2] A *Loudermill* hearing refers to the Supreme Court's decision in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), in which the court held that in the context of a constitutionally protected property interest in continued employment, due process requires "some kind of a hearing" prior to the employee's discharge. *Id.* at 542 (citing *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 569-70 (1972)).

[3] It appears that on 9/1/10, a deposition was held, at which the Arbitrator was not present. (Arb. Op. at 2; Pl.'s Resp. to Def. Miller-Kotula's Mot. to Dismiss at ¶10, ECF No. 54.)

part of a conspiracy with Fadzen, Attorney Lalley, the arbitrator, and witnesses Borgini, McClelland, and Seig, "to terminate [him] without cause through conspiracy and a fraudulent arbitration process." (Compl. ¶12.) Plaintiff further alleges:

> Mr. Bacharach's sole purpose was to create the appearance that all grievance measures had been exhausted prior to arbitration and then leave Mr. Singleton 'hanging out in limbo' letting the statutes of limitation for appeals pass. Thus, the union breached its duty of fair representation in behalf of Mr. Singleton by purposely delaying the timeliness of the grievance and arbitration process and conducting an illegal and fraudulent arbitration resulting in Mr. Singleton's unlawful discharge without cause from the Pittsburgh Board of Education as a school police officer after 17 years of service.

*Id.*

After the arbitration record was closed on October 4, 2010, Singleton called Attorney Bacharach several times regarding the status of the decision, which went unanswered. (Compl. ¶13.) Attorney Bacharach finally responded to a friend of Plaintiff's, who was advised that it could take several months to receive a decision. (*Id.*) On November 4, 2010, Miller-Kotula issued her Opinion and Award, in which she denied the Union's grievance and found that the Board had "just cause" to terminate Singleton's employment based on his violation of the Board's policy prohibiting the possession of guns on Board property. (Compl. at ¶13; Arb. Op. at 32-34.)

The Union declined to appeal the arbitrator's award on behalf of Singleon. Consequently, on December 6, 2010, Singleton filed *pro se* a Petition to Vacate the Arbitrator's Decision in the Court of Common Pleas of Allegheny County ("Common Pleas Court"). (Pet.'s Resp. Br. to Dismiss Resps.' Mot. to Quash Pet. to Vacate Arb.'s Dec., Ex. C attached to Compl., ECF No. 1-3.) However, on May 23, 2011, the Common Pleas Court quashed

Singleton's petition for lack of standing.  (Order dated 5/23/11 by Judge Robert Colville ("Colville Order") at Docket No. GD 10-22763, Ex B attached to Compl., ECF No. 1-2.)

Thereafter, on November 9, 2011, Plaintiff filed the instant lawsuit in this Court.  In Part IV of his Complaint, Plaintiff identifies three causes of action in Sections A, B and C.  Count A, which is entitled, "The Plaintiff's termination was without Cause since Plaintiff did not commit the acts given as the reason for discharge," does not implicate any of the Union Defendants or Attorney Bacharach.  (Compl., Part IV, Count A, ECF No. 1 at 8.)

The Union Defendants and Attorney Bacharach are mentioned in several paragraphs under Count B, which is entitled, "The Defendants improper grievance procedures gives evidence Defendant's reason for discharge was a pretext for an improper reason."  (Compl., Part IV, Count B, ECF No. 1 at 9.)   In particular, Plaintiff alleges that Attorney Bacharach and Fadzen, Attorney Lalley, Borgini, Seig, McClelland, and the arbitrator, participated in the arbitration proceedings on 8/16/10 and 9/1/10 to intentionally present false statements against him.  (Compl. ¶15.)  Plaintiff also alleges that Defendant Tarka possessed knowledge of the "employment matter but failed to act and afford [him] the opportunity to present his side of the story concerning the events of February 12, 2010."  (*Id.*)

In addition, Singleton refers to Article 8, Section 11(c) of the collective bargaining agreement ("CBA") regarding Grievance and Arbitration Procedures – Third Level, which allegedly sets forth two options for selecting the arbitrator, neither of which, he contends, was followed in pursing his grievance.  (Compl. ¶16.)[4]  In this regard, Singleton avers, in conclusory fashion, that "Defendants chose to conspire by utilizing a person who is not associated with the [American Arbitration Association], but a friend or associate of Paul Lalley or the Law firm of

---

[4] Singleton has not attached a copy of the relevant sections of the CBA to either his Complaint or his response to the instant motion to dismiss.

Paul Lally where the arbitration proceedings took place." (*Id.*)[5]

Finally, in Count C, which is entitled, "The Arbitrator's decision fails to draw its essence from the party's collective bargaining agreement imposing her own brand of justice" (Compl., Part IV, §C, ECF No. 1 at 11), there is only one brief reference to Defendant Tarka. Specifically, in paragraph 19 of the Complaint, Plaintiff alleges that the Board, Spolar, and Tarka "fail[ed] to investigate this matter thoroughly and afford [him] the opportunity to present evidence and arguments to the charges against him and receive fair representation from the Union." (Compl. ¶19.) Instead of providing training to him, Plaintiff contends that these Defendants "chose to listen to an erroneous charge by Mr. Robert Fadzen instigated by Kenneth Scott and Margret Seig to pursue a termination without cause." (*Id.*)

In response to Plaintiff's Complaint, the Union Defendants and Attorney Bacharach filed a motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on February 20, 2012. Thereafter, Plaintiff filed a response and brief in opposition on March 28, 2012. This motion has been fully briefed and thus is ripe for disposition.

### B.      Legal Standard – Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[5] Plaintiff fails to identify which of the Defendants allegedly so conspired.

inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688).

## C. <u>Discussion</u>

The gravamen of the Complaint against the Union Defendants and Attorney Bacharach is that they violated Plaintiff's due process rights, and that Heilman and Attorney Bacharach conspired with some of the other Defendants to deny him due process during the grievance and arbitration proceedings. The Complaint also appears to assert that the Union breached its duty of

fair representation to him.[6]

### 1. Section 1983 Claim

As to the Section 1983 claim against the Union Defendants and Attorney Bacharach, Plaintiff has failed to allege sufficient facts to show or suggest a plausible Section 1983 claim against them. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. Thus, to state a claim for relief under Section 1983, Plaintiff must demonstrate that the Union Defendants were acting under color of state law and that a constitutional violation was directly caused by their conduct. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### a. PFT, Tarka & Heilman

In the case at bar, the Union Defendants submit that they are not state actors and therefore cannot be liable to Plaintiff under Section 1983. The Court agrees with the Union Defendants that the PFT, its President, John Tarka, and representative, William Heilman, are not state actors. Generally, labor unions and their officials are not state actors. *See Wiggins v. String,* 428 F. App'x 117, 118 (3d Cir. 2011) (citing *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323-24 (2d Cir. 2002) ("Labor unions . . . generally are not state actors"); *Jackson v. Temple Univ. of Commw. Sys. of Higher Educ.,* 721 F.2d 931, 933 (3d Cir. 1983) (affirming grant of summary judgment where plaintiff failed to set forth any facts suggesting that the state was

---

[6] Although not identified as a separate cause of action, construing his Complaint liberally, Plaintiff appears to assert a claim for breach of the duty of fair representation against the Union. *See* Compl. ¶¶12,

responsible for the union or that the union was acting under color of state law in refusing to bring plaintiff's grievance to arbitration)).  Plaintiff has not alleged any facts in his Complaint suggesting or inferring any actions on the part of the PFT, Tarka or Heilman to deny him due process, which could be attributed to the School District and/or its employees.

Singleton's allegations against Tarka consist of the following:

- Plaintiff attempted to contact Union President Tarka after the *Loudermill* hearing but did not receive any response (Compl. ¶9);

- Tarka possessed knowledge of the "employment matter but failed to act and afford [him] the opportunity to present his side of the story concerning the events of February 12, 2010 (Compl. ¶15); and,

- The Board, Spolar, and Tarka "fail[ed] to investigate this matter thoroughly and afford [him] the opportunity to present evidence and arguments to the charges against him and receive fair representation from the Union."  Instead of providing training to Plaintiff, these Defendants "chose to listen to an erroneous charge by Mr. Robert Fadzen instigated by Kenneth Scott and Margret Seig to pursue a termination without cause" (Compl. ¶19).

These allegations do not suggest that Tarka acted in concert with the Board and/or Spolar, let alone that such concerted action was done with the intent to deny Plaintiff his due process rights. Indeed, the Complaint and documents attached thereto show that Plaintiff was given a *Loudermill* hearing at which he was represented by PFT representative Heilman, was afforded the opportunity to, and did, file a grievance, and was represented by Attorney Bacharach and presented his side of the story concerning the events of February 12, 2010 at the arbitration proceeding.  Thus, the allegation that Tarka personally failed to investigate Plaintiff's grievance and afford him an opportunity to present his side of the story is of no moment where Plaintiff readily admits that he received Union representation and assistance with his grievance through the arbitration process.

---

19.

Moreover, to the extent that Plaintiff is attempting to establish Tarka's liability solely by virtue of his position as president of the PFT, this argument lacks merit as a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 537 n. 3 (1981)) (other citation omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.*[7] (citing *Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir.1980) ("civil rights complaint adequate where it states time, place, persons responsible"); *Hall v. Pa. State Police*, 570 F.2d 86, 89 (3d Cir.1978) (same)). As Plaintiff has failed to allege any personal involvement by Defendant Tarka to cause his due process rights to be violated, the Section 1983 claim against Tarka must fail. Accordingly, the Court recommends that the motion to dismiss the Section 1983 claim against Tarka be granted with prejudice.

Likewise, Plaintiff fails to allege any action under color of state law taken by the PFT. Nor does Plaintiff allege any personal involvement on the part of the PFT that would give rise to Section 1983 liability. There are no facts alleged in the Complaint suggesting that the Union had a policy or practice in place that violated Plaintiff's due process rights, or that it was personally involved in a conspiracy with any state actors to deprive Plaintiff of his right to due process. Moreover, to the extent the Complaint or Plaintiff's brief in opposition can be construed as advancing the position that the Union's refusal to file an appeal of the Arbitrator's decision to the common pleas court can form the basis of a viable Section 1983 claim, the court of appeals has

---

[7] The court of appeals in *Rode* further stated that personal involvement can be shown through allegations of "actual knowledge and acquiescence." 845 F.2d at 1207. However, in light of the Supreme Court's holding in *Iqbal,* 556 U.S. at 677, which rejected the theory that a supervisor could be held liable based on knowledge of and acquiescence in his subordinate's acts, the court of appeals has questioned whether the "knowledge and acquiescence" standard is still good law. *Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186, 191 n. 5 (3d Cir. 2009).

determined otherwise. *Jackson,* 721 F.2d at 933 n. 1 (noting that court was not aware of any authority which has recognized a section 1983 action where a union has refused to take to arbitration an employee's claim against a public employer). Accordingly, Plaintiff has failed to state a Section 1983 claim against the PFT. Therefore, the Court recommends that the motion to dismiss the Section 1983 claim against the PFT be granted with prejudice.

Similarly, the allegations against the Union representative, William Heilman, do not, in any way, suggest that Heilman acted under color of state law. Plaintiff alleges that Heilman was assigned to be his union representative, told him he could not use his own attorney but had to follow the union's grievance procedure, appeared at the *Loudermill* hearing with him, filed a grievance on his behalf and requested an arbitration hearing. None of these actions implicate the involvement of the Board, the School District, or its employees, nor do these allegations suggest that this conduct was done in concert with the School Board or other School District employees.

Plaintiff does, however, plead that Heilman was part of a conspiracy with Fadzen, Attorney Bacharach, Attorney Lalley, the arbitrator, and the witnesses, Borgini, McClelland, and Seig, "to terminate [him] without cause through conspiracy and a fraudulent arbitration process." (Compl. ¶12.) The court of appeals has recognized an exception to the general rule that a union and its officials are not state actors where the plaintiff has shown that the union's actions are fairly attributable to the state, i.e., either the state was responsible for the union, or the union was acting under color of state law. *Johnson v. Int'l Bhd. of Teamsters (Local 830),* 256 F. App'x 481, 483 (3d Cir. 2007) (citing *Jackson*, 721 F.2d at 933); *Wiggins,* 428 F. App'x at 118 (citing *Ciambriello* and *Jackson, supra*). Thus, a conspiracy between private and state actors to violate

an individual's constitutional rights, if sufficiently pled, would satisfy the state actor requirement.

Heilman argues that conclusory allegations of a conspiracy, without any supporting factual allegations of a combination, agreement or understanding among all or between any of the defendants or co-conspirators to plot, plan or conspire to carry out the alleged chain of events, are insufficient to state a claim for conspiracy under Section 1983, and thus, confer state actor status on them. The Court agrees.

A civil conspiracy under § 1983 is "'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage.'" *Adams v. Teamsters Local 115,* 214 F. App'x 167, 172 (3d Cir.2007) (quoting *Hampton v. Hanrahan,* 600 F.2d 600, 620-21 (7th Cir. 1979)). To state a conspiracy claim under § 1983, a plaintiff must show that persons acting under color of state law conspired to deprive him of a federally protected right. *See Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa 2000); *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir.1999), *superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist.,* 585 F.3d 727 (3d Cir. 2009). "In addition, there must be evidence of actions taken in concert by defendants with the specific intent to violate that right." *Crist v. Phelps*, 810 F. Supp. 2d 703, 711 (D. Del. 2011) (citing *Williams v. Fedor,* 69 F.Supp.2d 649, 665–66 (M.D.Pa.), *aff'd,* 211 F.3d 1263 (3d Cir.2000) (citing *Kerr v. Lyford,* 171 F.3d 330, 340 (5th Cir.1999))). After *Twombly,* to survive a 12(b)(6) motion, the complaint must allege enough factual matter (taken as true) to suggest that a "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of

events" was made.  *Twombly,* 550 U.S. at 556; *Panayotides v. Rabenold*, 35 F.Supp.2d 411, 419 (E.D.Pa.1999), citing *Hammond v. Creative Fin. Planning,* 800 F.Supp. 1244, 1248 (E.D.Pa. 1992)). *See also Loftus v. Southeastern Pa. Transp. Auth.*, 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("While the pleading standard under Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements.")

In the case at bar, the Complaint does not contain any factual allegations of a combination, agreement, or understanding between Heilman and any of the School District employees, to plot, plan, or conspire to bring about Plaintiff's termination.  Moreover, even if Plaintiff could plead sufficient facts to show that Heilman entered into an agreement with these witnesses to present false testimony at the arbitration proceeding in order to bring about his termination, Plaintiff would still be unable to establish the state actor requirement.  As discussed in the Report and Recommendation dated August 24, 2012 regarding the motion to dismiss filed by the Attorney Lalley ("Lalley R&R"), Fadzen, Borgini, McClelland and Seig have absolute witness immunity for the alleged false statements made during their testimony at the arbitration proceedings, which includes any conspiracy to so act.  *See* Lalley R&R, ECF No. 65 at 13-14.[8]

---

[8] In the Lalley R&R, this Court held:

> Witnesses are absolutely immune from suit for testifying at trial or before a grand jury, as well as in pretrial proceedings, even if that testimony is false.  *See Briscoe v. LaHue,* 460 U.S. 325, 342-46 (1983) (witness who testified in criminal trial had absolute immunity with respect to any claim based on the witness' testimony, even if the testimony was false); *Rehberg v. Paulk,* 132 S.Ct. 1497, 1506 (2012) (grand jury witnesses enjoy the same immunity as witnesses at trial—absolute immunity from any Section 1983 claim based on the witness' testimony); *Kulwicki v. Dawson,* 969 F.2d 1454, 1467 & n. 16 (3d Cir. 1992) (witness at judicial proceeding was absolutely immune for false testimony); *Williams v. Hepting,* 844 F.2d 138, 143 (3d Cir. 1988) (witness was entitled to absolute immunity from civil liability under Section 1983 for perjured testimony at a preliminary hearing and suppression hearings).  Moreover, if a witness is immune from Section 1983 liability for testifying falsely at a judicial proceeding, the witness will also be immune for conspiring with others to testify falsely.  *See McArdle v. Tronetti,* 961 F.2d 1083, 1085-86 (3d Cir. 1992), *abrogated on other grounds as recognized in Loftus v. SEPTA,* 843 F.Supp. 981, 984 (E.D.Pa. 1994).

ECF No. 65 at 14.

Thus, because Fadzen, Borgini, McClelland and Seig are the only state actors alleged to have conspired with Heilman, and they are immune from Section 1983 liability as to that alleged conspiracy, their actions cannot be attributed to Heilman. Accordingly, Plaintiff cannot show, as a matter of law, that Heilman is a state actor. Therefore, the Court recommends that the Section 1983 claim against Heilman be dismissed with prejudice.

### b. Attorney Bacharach

Attorney Bacharach submits that none of the allegations in the Complaint state a cognizable Section 1983 claim against him. These allegations include:

- Attorney Bacharach represented Plaintiff at his unemployment compensation appeal hearing; Plaintiff's appeal was denied based on the Board's termination of his employment for just cause, and Attorney Bacharach did not appeal that ruling (Compl. ¶10);

- Attorney Bacharach represented Plaintiff at the arbitration hearing and subsequent deposition on August 16, 210 and September 1, 2010, respectively (Compl. ¶12);

- Attorney Bacharach did not respond to Plaintiff's telephone calls in October of 2010 regarding the status of the arbitrator's decision, but eventually informed a friend of Plaintiff's that a decision could take several months (Compl. ¶13).

None of these allegations show or suggest in any way that Attorney Bacharach is a state actor, i.e., acted under color of state law. Mere representation of a client in a court proceeding does not make a private attorney a state actor for purposes of Section 1983. *See e.g. Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980) (noting that "[a]lthough states license lawyers to practice, and although lawyers are deemed "officers of the court," this is an insufficient basis for concluding that lawyers act under color of state law for the purposes of 42 U.S.C. §1983."); *Humphrey v. Ct. Com. Pl. of York Cnty., Pa.*, 640 F. Supp. 1239, 1243 (M.D. Pa. 1986) ("a private attorney does not act under color of state law while representing a client."); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their

traditional functions will not be considered state actors solely on the basis of their position as officers of the court.").

Nor do these allegations show or suggest that Attorney Bacharach's actions denied Plaintiff constitutionally sufficient notice and/or an opportunity to be heard with regard to his termination. Indeed, the Arbitrator's Opinion and Award clearly demonstrates that Plaintiff was represented by counsel at the arbitration proceedings, where he was afforded the opportunity to and did present evidence to support his version of the events that led to his termination, to cross examine the Board's witnesses, to present argument, and to submit a post-hearing brief. *See* Arb. Op. & Award, Ex. D attached to Compl., ECF No. 1-5.

Plaintiff further alleges that "[Attorney] Bacharach's sole purpose was to create the appearance that all grievance measures had been exhausted prior to arbitration and then leave Mr. Singleton 'hanging out in limbo' letting the statutes of limitation for appeals pass." (Compl. ¶12.) However, this allegation does not show, nor can it be inferred therefrom, that Attorney Bacharach's alleged conduct can be attributed to any state actor, i.e., the School Board or any of the School District employees. Even if this allegation did show state action, it simply fails to state a plausible due process violation. Plaintiff does not indicate for which appeal the statute of limitations expired—either the unemployment compensation appeal or the appeal from the arbitrator's award. If the allegation implicates the former, that proceeding has no bearing on whether Plaintiff was denied due process with regard to the Board's termination of him; if the latter proceeding is implicated, no Section 1983 liability arises for failing to take an appeal of an arbitration award, *see Jackson,* 721 F.2d at 933 (affirming grant of summary judgment where plaintiff failed to set forth any facts suggesting that the state was responsible for the union or that

the union was acting under color of state law in refusing to bring plaintiff's grievance to arbitration).

Finally, Plaintiff alleges that Attorney Bacharach, along with Heilman, allegedly conspired with Fadzen, his counsel, Attorney Lalley, the Arbitrator, and witnesses Borgini, McClelland and Seig, "to terminate [him] without cause through conspiracy and a fraudulent arbitration process" (*id.*), and that these Defendants (minus Heilman) participated in the arbitration proceedings "to intentionally present false statements against him (Compl. ¶15). Although private individuals have been found to take on state actor status in situations where the acts of the private party are fairly attributable to the state, i.e., where the private party acted in concert with state actors, *see Tower,* 467 U.S. at 920, these allegations fail to show that Attorney Bacharach acted in concert with state actors, for purposes of Section 1983 liability, for the same reason articulated above with regard to Defendant Heilman. Although a private individual can acquire "state actor" status by conspiring with state actors to deprive an individual of his constitutional rights, Plaintiff has failed to allege facts to show an agreement between Attorney Bacharach and the state actors, i.e., Fadzen, Borgini, McClelland, or Seig, to violate Plaintiff's due process rights.

In his response to Attorney Bacharach's argument that Plaintiff has failed to allege facts to show an agreement between Bacharach and the state actors, Plaintiff submits that Attorney Bacharach "did not inform [him] of any agreements he made with any other Defendants for the arbitration process to be conducted outside the rules of the [CBA]. Defendant Bacharach should have known the proceedings were not being conducted according to the collective bargaining [agreement] when witnesses not present at the loudermill hearing appeared at arbitration and advise Plaintiff accordingly." Pl.'s Resp. to Union Defs.' & Bacharach's Mot. to Dismiss at ¶6,

ECF No. 52 at 3. Plaintiff's argument misses the mark. First, these statements do not appear in his Complaint, and thus, the Court does not have to accept them as true. Second, even if Plaintiff were to amend his Complaint to include these statements, his conspiracy claim would still fail, as these statement do not contain any facts showing the existence of an agreement among the Defendants to violate his due process rights.

Moreover, there is nothing improper about allowing witnesses to testify at a subsequent arbitration hearing when they did not appear at the *Loudermill* hearing. By its very nature, the *Loudermill* hearing is a pre-termination hearing, which need not be "elaborate;" "'something less' than a full evidentiary hearing is sufficient prior to [termination]." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985). All that is required at the pre-termination hearing is oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Id.* at 546. This abbreviated pre-termination procedure has been found to satisfy due process for a tenured public employee, so long as the employee is also provided with a full evidentiary hearing post-termination. *Id.* That is exactly what happened in the case at bar.

In addition, Plaintiff's argument fails for another reason. This Court has found that Borgini, McClelland and Seig, who are state actors, are not liable for Section 1983 liability with regard to the alleged false statements as they have absolute witness immunity.[9] Fadzen, who is the only other alleged co-conspirator and a state actor, is also entitled to absolute witness immunity for the same reasons as stated with regard to Borgini, McClelland and Seig.[10] Thus, because Fadzen, Borgini, McClelland and Seig are the only state actors alleged to have conspired

---

[9] *See* Lalley R&R, ECF No. 65 at 14.
[10] *See* Note 9, *supra*. Although Plaintiff has alleged misconduct on the part of Fadzen other than the false statements and/or conspiracy to provide false statements, that misconduct in no way implicates Attorney Bacharach.

with Attorney Bacharach,[11] and they are immune from Section 1983 liability as to that alleged conspiracy, their actions cannot be attributed to Attorney Bacharach. Accordingly, Plaintiff cannot show, as a matter of law, that Attorney Bacharach is a state actor.

Plaintiff fails to address Attorney Bacharach's argument that he is not a state actor. Instead, Plaintiff responds by asserting several new factual allegations in his opposition brief, which are not material to his Section 1983 claim. For example, Plaintiff asserts in his opposition brief that Attorney Bacharach advised him that the ruling on his unemployment compensation appeal was not appealable (Pl.'s Opp'n Br. at ¶7, ECF No. 53 at 4), and that Attorney Bacharach was made aware that Plaintiff contacted the City of Pittsburgh Zone 2 Police and met with Commander Trosky regarding the taking of his firearm by Fadzen (*id.* at ¶10, ECF No. 53 at 4). Neither of these statements is material to Plaintiff's Section 1983 claim against Attorney Bacharach. Plaintiff also asserts in his opposition brief that he informed Attorney Bacharach that in the past, Defendants Seig, Fadzen and McClelland possessed a weapon on school property without retribution. (Pl.'s Opp'n Br. at ¶¶12, 18). To the extent Plaintiff may be contending that Attorney Bacharach is liable because he possessed this knowledge but allegedly failed to act upon it, the Arbitrator's Opinion belies this conclusion. The possession of weapons by other School District Police officers on school property was raised at the arbitration hearing by the attorneys for both sides.[12]

The thrust of Plaintiff's opposing argument appears to be that but for Attorney

---

[11] This Court has previously found that neither the Arbitrator, Miller-Kotula, nor Attorney Lalley is a state actor and, in any event, both are immune from Section 1983 liability. *See* ECF No. 64 at 14, and ECF No. 65 at 10-12, 14.

[12] It appears from the Arbitrator's Opinion that Attorney Bacharach cross-examined McClelland regarding her possession of a weapon on school property in the past which she denied. (Arb. Op. at 5-6.) On his direct examination by Attorney Bacharach, Plaintiff testified that he has seen firearms at the Ridge Avenue parking facility in personal vehicles. (Arb. Op. at 13.) At the Arbitration hearing, Attorney Lalley advanced the position on behalf of the Board that Plaintiff's fellow police officers testified that

Bacharach's unethical conduct and failure to properly represent him, Plaintiff's arbitration would not have been fraudulent. In support, Plaintiff submits that given his 40 plus years of legal experience, Attorney Bacharach should have known that: (1) Fadzen was acting outside his jurisdiction; (2) Plaintiff did not commit a crime; and (3) the grievance process was fraudulent. (Pl.'s Opp'n Br. at ¶8, ECF No. 53 at 4.) As to his first point, Plaintiff explains that Attorney Bacharach should have known Fadzen was acting outside his jurisdiction by seizing Plaintiff's licensed firearm since Fadzen was previously involved in litigation involving similar conduct and was "warned by the Pennsylvania Superior Court he was acting outside his jurisdiction," citing *Kevin Williams v. Pittsburgh Board of Education and Robert Fadzen*.[13] (Pl.'s Opp'n Br. at ¶9, ECF No. 53 at 4.) However, Plaintiff does not explain how Attorney Bacharach should have known this. Even if Attorney Bacharach did possess such knowledge, Plaintiff fails to explain how Attorney Bacharach's knowledge of such information led to Plaintiff's improper termination or somehow resulted in a fraudulent arbitration proceeding. Fadzen's seizure of Plaintiff's weapon occurred after the incident which gave rise to Plaintiff's termination, and thus, has little relevance, if any, to whether Plaintiff was afforded due process with regard to his termination. Thus, it cannot be inferred from Attorney Bacharach's alleged failure to act upon this knowledge that his conduct was unethical or that he failed to adequately represent Plaintiff.

As to Plaintiff's second point, that Attorney Bacharach should have known that he did not commit a crime, it appears that Attorney Bacharach not only knew this, but did, in fact, argue this point to the Arbitrator at the hearing. (Arb. Op. at 25-26.) Unfortunately for Plaintiff, the Arbitrator was not persuaded by this argument.

Finally, with regard to Plaintiff's third point, nothing in the Complaint or exhibits

they did not keep their guns in their cars when they reported to work. (Arb. Op. at 21.)

[13] Plaintiff fails to provide a citation to the reporter where this opinion is found, or attach a copy of the

attached thereto suggests that the arbitration process was fraudulent. This conclusion is based, in part, on the Court's findings on the first two points. In addition, the Arbitrator's Opinion clearly shows that Attorney Bacharach objected to the introduction of testimony from the police officer witnesses about the sequence of events on February 12, 2010. (Arb. Op. at 22.) In response to his objection to this evidence, the Board argued that Plaintiff received a written notice via a letter[14] which more than adequately put Plaintiff and the PFT on notice as to the grounds for the proposed discipline—his conduct with regard to the gun on February 12, 2010. (Arb. Op. at 22.) The Arbitrator overruled the PFT's objection and allowed the testimony of the police officer witnesses. At that point, there was nothing further Attorney Bacharach could do but attempt to discredit the witnesses through cross examination. Ultimately, the Arbitrator made a credibility determination and decided, based upon all of the evidence, that Plaintiff's version of the events was not credible. (Arb. Op. at 33-34.) Thus, to the extent Plaintiff's argument, that Attorney Bacharach's conduct was unethical and that he failed to adequately represent Plaintiff, is founded upon the contention that the arbitration process was fraudulent, it is belied by the Arbitrator's opinion. Accordingly, the Court finds no merit to Plaintiff's argument in opposition.

Therefore, for the reasons set forth above, the Court recommends that the Section 1983 claim against Attorney Bacharach be dismissed.[15]

---

unpublished slip opinion.

[14] Although not clearly identified in her opinion, the Arbitrator appears to be referring to the March 22, 2010 correspondence from Defendant Spolar summarizing the events on February 12, 2010 and Plaintiff's conduct, and the basis for his suspension and recommended termination. (Ex. G attached to Compl., ECF No. 1-8.)

[15] Plaintiff also alleges that "Defendants" conspired by choosing an arbitrator who is not associated with the AAA, but was friend or associate of Paul Lalley or his law firm (Compl. ¶16), but he does not identify which Defendants allegedly so conspired. Beside the fact that this is a wholly conclusory statement which does not contain any facts to suggest a §1983 conspiracy, even if true, this statement does not show or suggest that Attorney Bacharach, either alone or with the other Defendants, denied Plaintiff a meaningful opportunity to be heard. Indeed, the record shows that Plaintiff was represented by counsel at the arbitration proceedings, where he was afforded the opportunity to and did present evidence to support

### 2.    Duty of Fair Representation Claim

As to the claim that the Union, through its officials and/or agents, breached its duty of fair representation to Plaintiff, the Union Defendants submit that the Complaint and documents attached thereto show that the grievance was advanced through the grievance process, culminating in an arbitration hearing, at which Plaintiff was represented by Attorney Bacharach, who presented evidence, cross-examined the Board's witnesses, and presented argument in support of Plaintiff's grievance.    Attorney Bacharach also submitted a post-hearing brief on Plaintiff's behalf.    Thus, the Union Defendants submit that Plaintiff was afforded fair representation by the PFT.  Plaintiff does not respond directly to this argument.

A claim for violation of the duty of fair representation will lie where a plaintiff can show that the union "discriminates against certain employees or arbitrarily and in bad faith refuses to submit a grievance to arbitration." *Casner v. Am. Fed'n of State, Cnty. & Mun. Employees,* 658 A.2d 865, 871 (Pa. Commw. Ct. 1995) (citing *Vaca v. Sipes,* 386 U.S. 171 (1967)).  In the case at bar, the allegations in the Complaint which appear to support a claim for breach of the duty of fair representation include:

- The Union, through the actions of Attorney Bacharach, breached its duty of fair presentation to Plaintiff "by purposely delaying the timeliness of the grievance and arbitration process and conducting an illegal and fraudulent arbitration resulting in [Plaintiff's] unlawful discharge without cause . . ." (Compl. ¶12);

- The Union failed to follow the procedures for selecting an arbitrator as set forth in the CBA (Compl. ¶16);

- "Defendants" conspired by choosing an arbitrator who was not associated with the AAA, but was a friend or associate of Attorney Lalley or his law firm (*Id.*);

- Plaintiff did not receive fair representation from the Union because of Tarka's

---

his version of the events that led to his termination, to cross examine the Board's witnesses, to present argument, and to submit a post-hearing brief.    *See* Arb. Op. & Award, Ex. D attached to Compl., ECF No. 1-5.  At best, this allegation may have some relevance to Plaintiff's claim that the Union breached its duty of fair representation to him, but has no bearing on Plaintiff's Section 1983 claim.

failure to investigate the grievance thoroughly or to afford him the opportunity to present evidence and arguments to the charges against him (Compl. ¶19).

None of these allegations is, however, sufficient to show or suggest a plausible claim for breach of the duty of fair representation. For the most part, these allegations state conclusions, as opposed to facts. Moreover, none of the facts alleged supports a finding that the Union handled Plaintiff's grievance differently than the grievances of similarly situated employees.[16] Nor do the factual allegations suggest that the Union acted arbitrarily or in bad faith by refusing to submit Plaintiff's grievance to arbitration. Rather, the record shows that Plaintiff's grievance did proceed to arbitration.

In his brief in opposition to Defendants' motion to dismiss, Plaintiff alleges that after he received the Arbitrator's decision, Defendant Heilman stated to him that he (Heilman) and the other Defendants were afraid of Fadzen and Plaintiff would have to seek help outside the Union to rectify the matter. (Pl.'s Opp'n Br. at ¶6, ECF No. 53 at 4.) However, this allegation is not contained in the Complaint, and therefore, the Court may not consider it in ruling on the motion to dismiss.

Therefore, the Court finds that Plaintiff has failed to state a plausible claim against the Union for breach of the duty of fair representation. Accordingly, the Court recommends that this claim be dismissed.

---

[16] In his response to Defendants' motion to dismiss, Plaintiff submits that he informed Attorney Bacharach that Defendants Seig, Fadzen and McClelland previously possessed weapons on school property without any disciplinary action. (Pl.'s Resp. to Union Defs. & Bacharach's Mot. to Dismiss at ¶8, ECF No. 52 at 4.) Plaintiff's response does not show or suggest, however, that the *Union* mishandled Plaintiff's grievance and/or arbitration, but rather, suggests that the *School District* may have treated Plaintiff differently than Defendants Fadzen, Seig and McClelland for the same or similar conduct. As such, Plaintiff's response does not support a plausible claim for breach of the duty of fair representation.

### 3. Leave to Amend the Complaint

This Court recognizes that the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint—regardless of whether the plaintiff requests to do so—when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Given that Plaintiff lacks an arguable basis in the law for his Section 1983 claim against the PFT, Tarka, Heilman and Attorney Bacharach, it would be futile to allow Plaintiff to amend his Section 1983 claim as to these Defendants. Therefore, this Court recommends that the Section 1983 claim against the Union Defendants and Attorney Bacharach be dismissed with prejudice.

As to Plaintiff's claim for breach of the duty of fair representation against the PFT, it is unclear whether Plaintiff can plead sufficient facts to state a viable claim for breach of the duty of fair representation against the Union. Ordinarily in these circumstances, the Court would grant the Plaintiff leave to amend his Complaint. However, this Court believes that supplemental jurisdiction should not be exercised over Plaintiff's pendant state law claim of breach of the duty of fair representation, as the only federal claims remaining in this lawsuit, assuming the District Court agrees with the instant report and recommendation, consist of a Section 1983 claim involving an alleged violation of the Fourteenth Amendment against the School Board and several of its employees, and a possible employment discrimination claim (disparate treatment and hostile work environment based on race) against the School Board. However, neither of the remaining federal claims shares a common nucleus of operative facts with the state law claim for breach of the duty of fair representation against the Union.

Under 28 U.S.C. §1367(a), federal courts "shall have supplemental jurisdiction over all

other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In other words, federal courts may constitutionally exercise supplemental jurisdiction over state law claims "when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir. 1981) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)). A federal court may, in its discretion, decline to exercise jurisdiction over pendant state law claims in four circumstances. 28 U.S.C. §1367(c). The one circumstance relevant here is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). This is also true where, as here, all federal claims against certain defendants have been dismissed leaving only a pendant state law claim against them, which lacks a common nucleus with the remaining federal claims against the other defendants. *See Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1480 (E.D.Pa. 1994).

Here, the state law claim against the Union Defendants involves an interpretation of the CBA, the alleged actions or inactions by the Union Defendants and/or Attorney Bacharach during the grievance process, including whether the selection of the Arbitrator, representation at the Unemployment Compensation hearing, refusal to take an appeal of both the denial of unemployment claim and Arbitrator's decision, constitute bad faith. These facts have nothing in common with facts that would support a viable Section 1983 claim against the School Board and/or its employees—whether Plaintiff was afforded adequate notice and an opportunity to be heard, by his employer. Nor do the facts underlying the state law duty of fair representation claim have anything in common with a potential employment discrimination claim (based on race) against the School Board. Lacking a common nucleus of operative fact, no basis exists for

exercising supplemental jurisdiction over the state law claim against the Union.

Therefore, the Court finds that leave to amend the Complaint regarding the breach of duty of fair representation claim should not be granted, but that the motion to dismiss this claim be granted without prejudice, so that Plaintiff may pursue this claim in state court should he so choose.[17]   In so ruling, the Court does not intend to suggest that Plaintiff has or can state a viable claim for breach of the duty of fair representation against the Union.

### D.    Conclusion

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants PFT, John Tarka, William Heilman, and John Bacharach (ECF No. 32) be granted with prejudice as to the Section 1983 claim against them.   It is further recommended that the motion to dismiss the breach of duty of fair representation claim be granted without prejudice, so that Plaintiff may file such a claim, should he so desire, in state court.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.   Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

---

[17]Section 1367(d) provides that the statute of limitations for a state law claim over which the court declines to exercise supplemental jurisdiction shall be tolled while the claim is pending in federal court and for a period of 30 days after it is dismissed unless State law provides a longer tolling period.  28 U.S.C. §1367(d).  In Pennsylvania, a two year statute of limitations applies to breach of duty of fair representation claims.  *See Casner,* 658 A.2d at 871.

August 24, 2012                    BY THE COURT:


                                   ___/s/ Lisa Pupo Lenihan _____
                                   LISA PUPO LENIHAN
                                   Chief United States Magistrate Judge


cc:     All Counsel of Record
        *Via Electronic Mail*

        Gerald Singleton, *Pro Se Plaintiff*
        5514 Stanton Ave., #4
        Pittsburgh, PA 15206
        *Via First Class, U.S. Mail*