IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD SINGLETON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:11-cv-1431 |
| v. | ) |
| | ) Judge Cathy Bissoon |
| PITTSBURGH PUBLIC SCHOOL | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| DISTRICT, *et al.,* | ) |
| | ) ECF No. 75, 77 |
| Defendants. | ) |
| | ) |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants Pittsburgh
Public School District, Dante Borgini, Latisha Cassidy McClelland, Kenneth Scott, Margaret
Seig, and Jody Spolar pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 77) be
granted with prejudice in part and granted without prejudice in part, as more fully set forth
below.  It is further recommended that the Motion to Dismiss filed by Defendant Robert Fadzen
pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 75) be granted with prejudice in
part and granted without prejudice in part, as more fully set forth below.

### II.    REPORT

This civil rights action arises out of grievance and arbitration proceedings held with
regard to Plaintiff's termination as a police officer for the Pittsburgh Public School District
("School District").  In addition to the School District, Plaintiff has named as Defendants several
co-workers/police officers, Dante Borgini, Latisha Cassidy McClelland, Kenneth Scott, and

Margaret Seig, and the Human Resources Director for the School District, Jody Spolar (collectively, the "School District Defendants"), and his immediate supervisor and School Safety Chief at the time, Robert Fadzen.[1]

Plaintiff, Gerald Singleton, who is proceeding in this matter *pro se,* appears to be raising a due process violation under the Fourteenth Amendment with regard to the manner in which his *Loudermill* hearing and subsequent arbitration were handled, as well as a conspiracy to deprive him of his due process rights. In addition, Plaintiff asks this Court to review and overturn the School District's decision to terminate him and to order his reinstatement as well as back pay and other damages. (Am. Compl. ¶15.) Although not specifically pled, Plaintiff also sets forth allegations suggesting claims for a hostile work environment and disparate treatment against the School District,[2] and a defamation claim against Defendant Fadzen.

Currently pending before this Court are the motions to dismiss filed by the School District Defendants and Fadzen. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331, and may exercise supplement jurisdiction over related state law claims pursuant to 28 U.S.C. §1367.

A.      RELEVANT FACTS[3]

For purposes of the motion to dismiss, the Court must accept all well-pleaded facts in the

---

[1] Robert Fazden is no longer employed by the School District and is represented by separate counsel.

[2] Plaintiff attached to his original Complaint a right to sue letter from the EEOC, indicating that he has exhausted his administrative remedies as to certain discrimination claims. However, he has not provided a copy of his Charge of Discrimination with the EEOC so the Court is unable to ascertain which discrimination claims have been exhausted with the EEOC. ECF No. 1-2 at 2.

[3] The facts are taken from Plaintiff's Amended Complaint (ECF No. 73) and the Exhibits attached to his original Complaint (ECF Nos. 1-2 through 1-9). Plaintiff did not attach these exhibit to his Amended Complaint but filed a Notice (ECF No. 87) with the Court on 4/30/13 indicating that he intended that the exhibits attached to his original Complaint still be considered as part of the record.

Amended Complaint as true. Gerald Singleton was hired in September of 1993 as a school security guard for the School District. (Am. Compl. ¶4, ECF No. 73.) As such, Singleton was covered under the collective bargaining agreement (the "CBA") between the Pittsburgh Board of Public Education ("Board") and the Pittsburgh Federation of Teachers ("Union"), and is a public employee. (*Id.*) Singleton was promoted to school police officer in 1997 and maintained his position until May 27, 2010, when he was terminated after his coworkers observed him with a handgun in his personal vehicle while located at the School District's Ridge Avenue Parking facility on February 12, 2010. (Am. Compl. ¶¶4, 6 & 10.)

On February 12, 2010, despite a severe snow storm which caused school to be cancelled, Singleton reported to work at the School District's Ridge Avenue parking facility on the North Side of Pittsburgh where he and several other school police officers were scheduled to have new radios installed in their school vehicles. (Am. Compl. ¶5.) The Ridge Avenue parking facility is owned by the School District but is not used for educational purposes and no students report there; the facility is used for storage, Pittsburgh Police SWAT team training, and vehicle parking. (Am. Compl. ¶¶5, 10.) On that day, Singleton agreed to use his personal vehicle in an attempt to haul a police vehicle from a snow drift in the presence of fellow school police officers Dante Borgini, Latisha Cassidy McClelland, and Margret Seig. (Am. Compl. ¶5.) While attempting to haul the police vehicle from the snow drift, Singleton's personal firearm fell beneath the brake pedal of his vehicle from below his seat. (Am. Compl. ¶6.) As Singleton was placing the firearm on his vehicle's console, the other officers saw the firearm, resulting in a verbal exchange. Seig began calling Singleton "stupid" and "asshole" in front of the other officers, to which Singleton replied by calling Seig a "fat bitch." Borgini and McClelland walked

away, laughing at the exchange. Singleton then left the Ridge Avenue parking facility and drove to downtown Pittsburgh, where his personal vehicle ran out of gas. (*Id.*)

After Singleton left, Seig called Commander Kenneth Scott to report Singleton for having a firearm in his personal vehicle, who in turn called Safety Chief Robert Fadzen. (*Id.*) While parked downtown, Singleton was contacted by school dispatch and told to remain at that location until Fadzen arrived. (Am. Compl. ¶7.) Upon arriving, Fadzen advised Singleton that he was going to be charged with the crime of possessing a weapon on school grounds, and then seized Singleton's personal firearm. Fadzen then instructed him to report to the school board administration building. (*Id.*)

When he arrived at the administration building, Singleton received a letter informing him he was being suspended with pay effective February 12, 2010. (Am. Compl. ¶7.) Singleton then reported to the Union to seek assistance in filing a grievance and was assigned William Heilman as his union representative. (*Id.*) Heilman allegedly told Singleton that he could not obtain his own attorney and was required to follow the Union's grievance process. (*Id.*)

On February 26, 2010, a *Loudermill* hearing[4] was held regarding Singleton's suspension, which was attended by Singleton, Heilman, Fadzen, and Attorney Paul Lalley representing the School District and Fadzen; no other witnesses appeared at the hearing. (Am. Compl. ¶8.) Defendant Jody Spolar, Human Resources Director, was not present at the *Loudermill* hearing, nor was any other School District official present. (*Id.*) At the *Loudermill* hearing, Fadzen stated that his reason for recommending Singleton's termination was for possessing a weapon on

---

[4] A *Loudermill* hearing refers to the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), in which the court held that in the context of a constitutionally protected property interest in continued employment, due process requires "some kind of a hearing" prior to the employee's discharge. *Id.* at 542 (citing *Bd. of Regents of State Coll. v. Roth,* 408 U.S. 564, 569-70 (1972)).

school property. (*Id.*)  Singleton also alleges that Fadzen suspended Borgini for not agreeing to make a statement against Singleton, which suspension was allegedly removed after Borgini relented to Fadzen's request.  (*Id.*)

Following the *Loudermill* hearing, Singleton attempted to contact the Union's then President, John Tarka, as well as members of the Board and superintendent Mark Roosevelt, through correspondence. (Am. Compl. ¶9.)   Although Singleton did not receive any response from these individuals, Spolar acknowledged his attempts to contact various Board members and informed him in correspondence dated 4/7/10 that it was in his best interest to cease and desist immediately from such attempts.  (Ex. H attached to Compl., ECF No. 1-8.)  Plaintiff alleges that School Board members terminated him without just cause and prior to investigating any evidence and arguments by him.  (Am. Compl. ¶9.)

In correspondence dated March 22, 2010, Spolar notified Singleton that his actions on 2/12/10 could result in him being charged with a crime under Section 912 of the Crimes Code (possessing a weapon on school property), and that he would serve an unpaid, five-day suspension from March 24 through March 30, 2010. (Am. Compl. ¶10; Ex F attached to Compl., ECF No. 1-7.)  In the March 22nd correspondence, Spolar described the events of February 12, 2010 in the following manner: "After you had freed the other vehicle from the snow and had stopped your vehicle, you were observed picking up a gun and holding it in a manner that allowed the other officers to see your possession of the gun within the car." (Am. Compl. ¶10; Ex. F attached to Compl.)  On March 30, 2010, Singleton was notified by Spolar that his five-day suspension was being converted to a recommendation for termination at the April Legislative meeting of the School Board.  (Ex. G attached to Compl., ECF No. 1-8.)

Subsequently, Singleton, through his union representative, Heilman, filed a grievance and requested an arbitration hearing. (Ex. D at 2, ECF No. 1-5, & Ex. H attached to Compl.) Singleton was informed by Spolar in correspondence dated 4/7/10 that he would have the opportunity to present any relevant information regarding his proposed termination for the consideration of the arbitrator. (Ex. H attached to Compl.)

The Union also assisted Singleton with the appeal of the denial of his application for unemployment compensation. On April 16, 2010, John Bacharach, the Union-appointed attorney, represented Singleton at his unemployment compensation appeal hearing, which was also attended by Fadzen. (Am. Compl. ¶11.) Fadzen is alleged to have stated at that hearing that Singleton was terminated for just cause for "violation of 18 Pa. C.S. §912, *Possessing a weapon on school property.*" (*Id.*) Fadzen also presented a copy of a school policy regarding firearms at school events, but did not produce a policy regarding possessing licensed firearms in personal vehicles. (*Id.*) This appeal was also denied based on Plaintiff's termination for just cause, and Attorney Bacharach did not appeal the ruling to the Unemployment Compensation Board of Review. (*Id.*)

At a meeting held on May 26, 2010, the Board terminated Singleton's employment, effective May 27, 2010. (Correspondence from Frank Chester dated 6/21/10, Ex. I attached to Compl., ECF No. 1-8.)[5]

Arbitration proceedings were conducted by Michelle Miller-Kotula ("Arbitrator") on August 16, 2010 and September 1, 2010, with Singleton represented by Attorney Bacharach, and

---

[5] Although Singleton attached the Chester 6/21/10 letter to his original Complaint, he nonetheless alleges that he received a letter dated June 7, 2010 stating he was fired for possessing a weapon on school property. (Am. Compl. ¶11.) It appears that Singleton may be referring to the Spolar letter dated 4/7/10 (attached to the original Complaint as Exhibit H), as there is no letter dated 6/7/10 attached to the Complaint or found elsewhere in the record.

the School District represented by Attorney Lalley. (Am. Compl. ¶12; Arbitrator's Opinion & Award ("Arb. Op."), Ex. D attached to Compl., ECF No. 1-5.) During the arbitration hearing, the parties were permitted to present evidence, both oral and written, to examine and cross-examine witnesses who were sworn and sequestered, and to argue their respective positions. (Arb. Op. at 2.) Specifically, Borgini, McClelland, Seig, and Fadzen testified, as did Singleton. (Am. Compl. ¶12; Arb. Op. at 3-19.) Singleton alleges that at the arbitration hearing, Fadzen presented a different reason for recommending his termination than that presented to the School District. Singleton alleges that Fadzen changed the reason from that of Singleton's possession of a weapon on school property, to Singleton pointed his firearm at fellow officers, Defendants Seig, Borgini, and McClelland, and threatened them. (Am. Compl. ¶12.) Singleton also contends that the Arbitrator allowed this new information and the testimony of the witnesses, Borgini, McClelland and Seig, into evidence at the arbitration hearing, when this evidence had not been previously admitted at any point during the grievance process, in violation of the CBA. (*Id.*) Singleton further alleges that Fadzen conspired with the other Defendants to terminate him without cause through conspiracy and a fraudulent arbitration process. (*Id.*) As a result, Singleton alleges that he was "denied his civil rights and right to due process" by the School District Defendants. (*Id.*)

The arbitration record was closed on October 4, 2010 (Arb. Op. at 2), and on November 4, 2010, the Arbitrator issued her Opinion and Award, in which she denied the Union's grievance and found that the Board had "just cause" to terminate Singleton's employment based on his violation of the Board's policy prohibiting the possession of guns on School property (Am. Compl. ¶13; Arb. Op. at 32-34). The Union declined to appeal the Arbitrator's award on Singleon's behalf. Consequently, on December 6, 2010, Singleton filed *pro se* a Petition to

Vacate the Arbitrator's Decision in the Court of Common Pleas of Allegheny County. (Docket No. GD 10-22763; Pet.'s Resp. Br., Ex. C attached to Compl., ECF No. 1-3.) Singleton named as respondents the Board (but not the School District) and the other Defendants including those already dismissed from this case. (*Id.*) On May 23, 2011, the Common Pleas Court quashed Singleton's petition for lack of standing. (Order dated 5/23/11 by Judge Robert Colville ("Colville Order"), Ex B attached to Compl., ECF No. 1-2.)

Thereafter, on November 9, 2011, Singleton instituted the present action in this Court. For relief, Singleton seeks both equitable relief and money damages, including reinstatement of benefits and position, plus exemplary or punitive damages, compensatory damages, damages for mental anguish, court costs and fees, plus any other relief to which he is entitled. (Am. Compl., Part V. Prayer, ECF No. 73 at 15-16.) In response, the Board, Borgini, McClelland, Scott, Seig, Spolar, and Fadzen filed motions to dismiss (ECF Nos. 26 & 42).[6] Before the Court ruled on these motions to dismiss, Singleton filed an Amended Complaint (ECF No. 73) substituting the School District for the Board as Defendant. The pending motions to dismiss were denied as moot, and subsequently, the School District Defendants and Fadzen filed motions to dismiss the Amended Complaint (ECF Nos. 75 and 77), which are currently pending before the Court, and supporting briefs.[7] Plaintiff has filed a response and brief in opposition to each motion.[8] Thus, the motions to dismiss filed by the School District Defendants and Fadzen are ripe for

_____

[6] The other named Defendants in this lawsuit—the Union, William Heilman, John Tarka, John Bacharach, Paul Lalley, and Michelle Miller-Kotula—also filed motions to dismiss (ECF Nos. 24, 29 & 32) which were granted. *See* ECF Nos. 70, 71 & 72.

[7] The School District Defendants and Fadzen have incorporated and adopted by reference the arguments made in their respective briefs.

[8] Plaintiff's opposition briefs do not address the arguments of the Defendants but rather merely reiterate his position that the arbitration process was unfair and the arbitrator's decision was wrong because there was no just cause for his termination. Thus, the Court will also consider the arguments made in Plaintiff's Amended Complaint that address some of Defendants' argument

disposition.

## B.    LEGAL STANDARD – MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly* at 556).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v.*

---

in considering the motions to dismiss.

*Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)).  *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688).

## C.    DISCUSSION

In his Amended Complaint against the School District Defendants and Fadzen, Singleton appears to allege the following claims:  (1) a Section 1983 claim for allegedly violating his rights under the Fourteenth Amendment;  (2) a Section 1983 claim for conspiracy to violate those rights;  (3) discrimination claims under Title VII (disparate treatment and hostile work environment) based on race; and (4) a state law defamation claim against Fadzen.  The School District Defendants and Fadzen have moved to dismiss all of the claims against them.  Before considering the plausiblity of Plaintiff's claims, the Court will first consider the argument by the individual Defendants that they were acting at all times in their official capacities, and therefore, the claims against them are in essence against the School District and should be dismissed with prejudice.

### 1.    Whether Individual Defendants Were Acting in Their Official Capacities, Requiring Dismissal of All Claims Against Them

As a preliminary matter, Defendants Borgini, McClelland, Scott, Seig, Spolar, and Fadzen move to dismiss all claims against them with prejudice, on the basis that all of the actions allegedly taken by them occurred while they were performing their duties for the School District. As such, Defendants contend that they were acting in their official capacities.  Because official capacity claims are just another way of pleading an action against the government entity of which the individual employees are agents, Defendants submit that such claims are in essence

claims against the School District itself.  In support, the individual Defendants rely primarily on *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985), and *Monell v. Dep't of Social Servs. of the City of New York,* 436 U.S. 658 (1977).    Plaintiff has not responded to this argument.

While the Court agrees with the general proposition stated in *Kentucky* and *Monell,* it does not agree with the individual Defendants' conclusion, as they apply an over-simplified analysis of the official capacity doctrine.  First of all, Singleton has not indicated in his Amended Complaint whether he is suing the individual Defendants in their official or personal capacities, or both.  Personal or individual capacity lawsuits under Section 1983 "seek to recover money [damages] from a government official, as an individual, for acts performed under color of state law[,]" as opposed to official capacity lawsuits, which "'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" and thus, are duplicative of the claims against the municipality.  *Gregory v. Chehi,* 843 F.2d 111, 120 (3d Cir. 1988) (quoting *Monell,* 436 U.S. at 690 n. 55) (other citations omitted).  The test for determining whether a lawsuit is brought in a personal capacity, as opposed to an official capacity, is not whether the defendants were performing "official duties." *See Hafer v. Melo,* 502 U.S. 21, 31 (1991) (holding Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties). Rather, when a plaintiff fails to plead capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of the proceedings to determine whether a state official is being sued in a personal (i.e., individual), versus official, capacity.  *Keys v. Carroll,* Civ. A. No. 3:10-CV-1570, 2011 WL 1152135, at *3 (M.D.Pa. Mar. 28, 2011) (citing *Biggs v. Meadows,* 66 F.3d 56, 60-61 (4th Cir. 1995) ("holding plaintiff need not expressly plead the capacity in which he is suing a defendant under § 1983, but the court

must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity")).

When the Court does so here, it concludes that Singleton's claims are brought against the individual Defendants in their personal, as well as their official, capacities. Where, as here, a plaintiff seeks both money damages and equitable relief, it can be inferred that the plaintiff is suing the officials in their individual capacities to the extent he seeks money damages. *Keys,* 2011 WL 1152135, at *3; *Biggs,* 66 F.3d at 61 (an indication that plaintiff is bring claim against state actor in personal capacity is a request for compensatory or punitive damages, neither of which is available in official capacity suits) (citations omitted). Another indicia of a personal capacity claim is where the alleged unconstitutional conduct involves individual actions and fails to allude to an official policy or custom that would shield the individual from personal culpability. *Biggs,* 66 F.3d at 61 (citation omitted). Here, Singleton alleges that there was no policy in place at any time during his employment that addressed the specific situation that occurred on February 12, 2010. For these reasons and because Singleton is proceeding in this matter *pro se,* the Court finds that his claims against the individual Defendants should be construed as individual or personal capacity claims. As such, the individual Defendants cannot show that the claims against them are only official capacity claims, and therefore, they are not entitled to dismissal of the claims asserted against them in their personal capacities. However, the Court recommends that any official capacity claims against the individual Defendants be dismissed with prejudice.

## 2.  Section 1983 Claim

In order to "state a claim of liability under §1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d

337, 339 (3d Cir. 2005) (citation omitted). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . , subjects, or causes to be subjected, any citizen of the United States of any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Therefore, to state a claim for relief under §1983, Singleton must demonstrate both that Defendants were acting under color of state law and that a constitutional violation was directly caused by Defendants' conduct. *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Defendants do not predicate dismissal of Plaintiff's Section 1983 claim on the first requirement—whether they are state actors. Thus, for purposes of deciding Defendants' motions to dismiss, the Court assumes without deciding that the first requirement has been met. As to the second requirement, Singleton contends his termination was based upon grounds that violated his constitutional rights under the Fourteenth Amendment (Am. Compl. ¶22), but he does not indicate which clause in particular Defendants allegedly violated. The allegations supporting Singleton's Section 1983 claim are interspersed throughout his Amended Complaint, the substance of which the Court construes as attempting to plead a procedural due process claim.

In order to establish a procedural due process claim, a Plaintiff must demonstrate that "'(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him

did not provide 'due process of law.'" *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.,* 574 F.3d 214, 219 (3d Cir. 2009) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000))).  Neither party disputes that Singleton's interest in his continued employment with the School District constitutes a protected property interest under the Fourteenth Amendment.  Rather, Singleton contends that the procedures available to him for contesting his termination were unfair and did not afford him due process of law.

The essential elements of due process are notice and an opportunity to be heard in a meaningful manner and at a meaningful time under the circumstances.  *Loudermill,* 470 U.S. at 542 (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950)); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted).  The Supreme Court has "described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.'"[9] *Loudermill,* 470 U.S. at 542 (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)) (emphasis in original) (other citation omitted).  In the context of a constitutionally protected property interest in continued employment, the Supreme Court has held that due process requires "some kind of a hearing" prior to an employee's discharge.  *Id.* (citing *Bd. of Regents v. Roth*, 408 U.S. at 569-70; *Perry v. Sindermann*, 408 U.S. at 599).  Recently, the United States Court of Appeals for the Third Circuit aptly summarized the law regarding due process in a similar factual situation:

> However, "[i]t is by now well established that '"due process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Gilbert v.*

---

[9] The Supreme Court noted, however, that a post deprivation hearing will satisfy due process requirements in some situations.  *Loudermill*, 470 U.S. at 542 n. 7 (citations omitted).

> *Homar,* 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (quoting *Cafeteria & Rest. Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Id.* (alteration in original) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). For instance, the Supreme Court has " 'rejected the proposition that [due process] *always* requires the State to provide a hearing prior to the initial deprivation of property.' " *Id.* (emphasis and alteration in original) (quoting *Parratt v. Taylor,* 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). "Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected." *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (citing *Arnett v. Kennedy,* 416 U.S. 134, 167-68, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part)).

*Biliski,* 574 F.3d at 220 (footnote omitted).

In *Mathews v. Eldridge*, the Supreme Court delineated three distinct factors that must be considered in determining what process is sufficient in a particular situation: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335 (citation omitted). In weighing these factors, the court of appeals provided the following guidance in a situation involving the dismissal of a public employee:

> In *Loudermill*, the Supreme Court held that a "pretermination 'hearing' ... need not be elaborate," but "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." 470 U.S. at 545-46, 105 S.Ct. 1487. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to

present his side of the story." *Id*. at 546, 105 S.Ct. 1487. Moreover, "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id*. at 545, 105 S.Ct. 1487 (alteration in original). "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." *Id*. (quoting *Mathews*, 424 U.S. at 343, 96 S.Ct. 893). *Loudermill* addresses the contours of pre-deprivation procedural requirements in a factual scenario where the plaintiff, a "tenured public employee," had been provided a post-termination hearing. 470 U.S. at 546, 105 S.Ct. 1487.

*Biliski*, 574 F.3d at 220-21.

With these precepts in mind, the Court will examine each Count of the Amended Complaint to determine whether Plaintiff has pled a plausible Section 1983 claim based on the Due Process Clause of the Fourteenth Amendment.

### a. Count A - The Plaintiff's Termination Was Without Cause Since Plaintiff Did Not Commit The Acts Given As The Reason For Discharge

Defendants submit that the allegations in Count A of the Amended Complaint do not implicate a Fourteenth Amendment violation under the Due Process Clause, but rather, are just another attempt to relitigate Plaintiff's just cause termination. The Court agrees.

In Count A, Singleton cites to the Pennsylvania statute governing the criminal offense of possessing a weapon on school property, 18 Pa. Cons. Stat. Ann. §912,[10] and argues that his termination was without cause because he was never charged with a crime because he committed

---

[10] Section 912 provides, in relevant part:

> A person commits a misdemeanor of the first degree if he possesses a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school.

18 Pa. Cons. Stat. Ann. §912(b).

no crime under §912. (Am. Compl. ¶14.)  In addition, Singleton alleges that a School District policy did not exist for school employees preventing them from carrying licensed firearms in personal vehicles on non-school grounds, and Defendants failed to present any such policy at any point during the unemployment compensation hearing or the grievance process.  (*Id.*)  Plaintiff further pleads that the U.S. Constitution protected his right to bear arms, and Pennsylvania Castle Doctrine extends his right to possess a licensed firearm within his personal vehicle.  (*Id.*)

Essentially in Count A, Singleton is asking this Court to overturn the School District's decision to termination him for cause. The Defendants submit that this Court lacks the power to do so, and the Court agrees. Singleton contends that the School District erred in concluding that there was cause for his termination because (1) there was no School District Policy in existence covering the exact situation involved here, and (2) he did not violate 18 Pa. Cons. Stat. §912 because the Ridge Avenue parking facility does not meet the legal definition of a "school zone" under Pennsylvania law.  (Am. Compl. ¶10.)  Even if the Court assumes, for purposes of deciding the motions to dismiss, that the School District erred in concluding that Singleton violated School District policy and/or Pennsylvania law in possessing a licensed firearm in his personal vehicle at the Ridge Avenue parking facility, that does not implicate a violation of any rights guaranteed by the Fourteenth Amendment.  Plaintiff's argument in Count A takes issue with the *reason* for his termination, not with the *process* afforded him to contest his termination.

Moreover, this Court does not have jurisdiction over appeals from school board decisions to terminate public employees for cause.  Singleton's only recourse, as a public school employee, was to pursue the grievance procedure provided for under the CBA.[11]  Singleton invoked the

---

[11] Because the School District is a Pennsylvania public school district, the CBA is governed by the Public Employees Relations Act, 43 P.S. §1101.101 *et seq.* (commonly referred to as "PERA" or "Act 195").

CBA, filed a grievance, and elected to proceed to arbitration, where the Arbitrator upheld the School District's decision to terminate him for cause. "[I]n local public employment disputes, the courts of common pleas have exclusive jurisdiction to review an arbitrator's award." *Scranton Sch. Dist. v. Scranton Federation of Teachers, Local 1147, AFT*, 402 A.2d 1091, 1093 (Pa. Commw. Ct. 1979) (citing Pa. R. Civ. P. 247, rescinded and now contained in 42 Pa. Cons. Stat. Ann. §933(b), effective June 27, 1978). Although Singleton filed a petition to vacate the Arbitrator's decision in the Court of Common Pleas, Judge Colville quashed the petition, finding that Singleton lacked standing to appeal the Arbitrator's decision because the Union was neither a party to the petition nor joined in his request. (Ex. B to Compl., ECF No. 1-3.) Any appeal from that order should have been taken to the Pennsylvania appellate courts, not brought in federal court.

While the Court is sympathetic to Plaintiff's situation, it is constrained to find that the allegations in Count A do not show or suggest a plausible claim for a violation of his due process rights under the Fourteenth Amendment. Therefore, the Court recommends that Count A be dismissed with prejudice as to all Defendants.

> **b.** **Count B - The Defendants' Improper Grievance Procedures Give Evidence That Defendant's Reason For Discharge Was A Pretext For An Improper Reason**

Looking at the title of Count B, initially it appears that Singleton is attempting to assert a pretext argument, similar to that applied at step three of the *McDonnell-Douglas* burden shifting analysis in employment discrimination cases,[12] to his due process claim; however, pretext is not

_____

[12] When direct evidence of discrimination is not available, discrimination claims are scrutinized under the familiar burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Initially, the plaintiff bears the burden of establishing a prima facie case by demonstrating: (1) he is a member of a "protected class;" (2) he is "qualified for the position;" (3) "he was subject to an adverse employment action despite being qualified;" and (4) under

a factor that is considered in determining Section 1983 liability, and Singleton has not asserted a Title VII discrimination claim in Count B.

In actuality, Singleton is alleging in Count B that Defendants Fadzen, Borgini, Seig, and McClelland, and the School District "participated in the arbitration proceedings on August 16, 2010 and/or September 1, 2010 to intentionally present false statements against [him]." (Am. Compl. ¶15, ECF No. 73 at 9.) Accepting this allegation as true, it does not, however, give rise to a plausible due process violation. Defendants Fadzen, Borgini, Seig and McClelland submit that they have absolute witness immunity for statements made at the arbitration hearing. The Court agrees.

Because the alleged false statements were made during testimony at the arbitration proceeding, under penalty of perjury, Defendants Borgini, McClelland, Seig, and Fadzen are entitled to absolute witness immunity from Section 1983 liability predicated on those statements. Witnesses are absolutely immune from suit for testifying at trial or before a grand jury, as well as in pretrial proceedings, even if that testimony is false. *See Briscoe v. LaHue,* 460 U.S. 325, 342-46 (1983) (witness who testified in criminal trial had absolute immunity with respect to any claim based on the witness' testimony, even if the testimony was false); *Kulwicki v. Dawson,* 969 F.2d 1454, 1467 & n. 16 (3d Cir. 1992) (witness at judicial proceeding was absolutely immune

---

circumstances that raise an inference of unlawful discrimination. *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 & n. 7 (3d Cir. 2003) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993); *McDonnell Douglas,* 411 U.S. at 802; *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n. 1, 352, 356 (3d Cir. 1999)) (footnote omitted). If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate non-discriminatory reason for the adverse employment action. *Id.* at 797 (citing *McDonnell Douglas,* 411 U.S. at 802). Once the employer carries its burden, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons proffered by the employer were merely a pretext for discrimination, and not the true motivation for the adverse employment action. *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)).

for false testimony).  Moreover, if a witness is immune from Section 1983 liability for testifying falsely at a judicial proceeding, the witness will also be immune for conspiring with others to testify falsely.  *See McArdle v. Tronetti,* 961 F.2d 1083, 1085-86 (3d Cir. 1992), *abrogated on other grounds as recognized in Loftus v. SEPTA,* 843 F.Supp. 981, 984 (E.D.Pa. 1994).

Therefore, the Court finds that Defendants Borgini, McClelland, Seig, and Fadzen are immune from liability for any alleged violations of Singleton's Fourteenth Amendment due process rights, including allegedly conspiring to violate those rights, to the extent liability is premised on the false statements allegedly made at the arbitration proceeding.  Accordingly, because Singleton alleges no other conduct on the part of Borgini, McClelland and Seig that would give rise to a violation of his due process rights,[13] the Court recommends that Count B be dismissed with prejudice as to Defendants Borgini, McClelland and Seig.

As to Defendant Fadzen, Singleton also alleges in Count B that after the February 12, 2010 incident, Fadzen possessed a personal animosity towards him due to Singleton's sudden transfer in the summer of 2008 from the East End to the North Side, and this animosity was apparent from Fadzen's telling other school police officers and school staff that Singleton was "bad mouthing him," and Fadzen's unsuccessful attempt to terminate Singleton's employment for a car accident that occurred shortly after he was transferred to the North Side.  (Am. Compl. ¶15, ECF No. 73 at 9.)  Singleton contends that Fadzen's conduct after February 12, 2010 was Fadzen's second attempt to terminate him without cause.  (*Id.*)

Defendant Fadzen submits that these allegations fail to show that he deprived Singleton of a right under the U.S. Constitution or recommend that his employment be terminated without

---

[13] The only other allegations in the Amended Complaint regarding these Defendants pertain to their actions on February 12, 2010, none of which forms the basis of Singleton's Section 1983 due process claim.

cause. Fadzen further submits that the only improper purpose behind the termination was his alleged personal animosity towards Singleton, which does not support a cognizable cliam under Section 1983. The School District advances a similar argument.

The Court agrees with Fadzen and the School District that this alleged conduct does not implicate a due process violation. The allegations in the Amended Complaint suggest that Fadzen neither conducted nor executed the grievance proceedings leading up to Singleton's termination, but merely testified as a witness as to his gun possession on school property, and that Fadzen harbored a personal animosity towards Plaintiff, none of which suggests that Plaintiff was denied notice and/or an opportunity to be heard. Thus, Count B falls short of stating a plausible claim against Fadzen for violating Singleton's due process rights. Therefore, the Court recommends that Count B against Fadzen be dismissed with prejudice.

As to the School District's liability under Section 1983, the School District further argues that the Section 1983 claim against it must be dismissed with prejudice because the allegation that the reason for Plaintiff's discharge was a pretext for an "improper reason" clearly fails to meet the pleading standard under *Twombly* and *Iqbal*. At best, the School District argues, only the mere possibility of misconduct can be inferred from the allegations and, in any event, the Amended Complaint makes clear that the improper reason was nothing more than the alleged "personal animosity," "enviousness," and "vindictiveness" of Defendant Fadzen.

The Court agrees with the School District that the factual allegations in Count B fail to state a plausible Section 1983 claim against it, but for a different reason. The School District is not liable for any alleged violation of Singleton's due process rights based on the alleged false testimony of its employees and former employee because under Section 1983, a School District cannot be held vicariously liable for the acts of its employees. In *Monell v. New York City Dep't*

*of Social Services*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of *respondeat superior*. Instead, the Supreme Court concluded that a governmental unit may be liable under Section 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id*.

In finding municipal liability pursuant to Section 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (quoted in *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon,* 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the policy, custom or practice and the alleged constitutional

deprivation. *Bielevicz*, 915 F.2d at 850-51. "As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." *Id*. at 851 (citing *Black v. Stephens*, 662 F.2d 181, 190-91 (3d Cir. 1981)).

Here, Singleton has alleged no facts in his Amended Complaint to suggest a plausible municipal liability claim against the School District, nor is it likely that he can do so, as he admits that no policy existed with regard to carrying personal weapons on non-school grounds, and he has not pled any facts to show a plausible municipal liability claim based on a custom or practice of the School District.

Finally, Singleton alleges in Count B that Defendants Scott, Spolar, and the School District possessed "knowledge of the employment matter but failed to act and afford [him] the opportunity to present his side of the story concerning the events of February 12, 2010." (Am. Compl. ¶15, ECF No. 73 at 9.) First, this allegation fails to show a plausible *Monell* claim against the School District, as it suggests neither a policy, practice or custom of the School District that violated Singleton's due process rights and, as stated above, the School District cannot be held liable for the acts of its employees. Because it does not appear likely that Singleton can plead a policy, practice or custom of the School District that violates his procedural due process rights, the Court recommends that Count B against the School District be dismissed with prejudice.

Second, this allegation fails to show a plausible due process violation as to either Defendant Scott or Defendant Spolar. Singleton's Amended Complaint indicates that Scott was not involved in the decision to terminate him, but merely received the telephone call from Seig on February 12, 2010 when she reported Singleton for having his firearm in his personal vehicle.

Scott, in turn, reported the incident to Fadzen. (Am. Compl. ¶6.) By Singleton's own admission, Scott was not present at either the *Loudermill* hearing or the arbitration proceeding. (Am. Compl. ¶¶8, 12; Arb. Op. at 3-19, attached to Compl. as Ex. D, ECF No. 1-5.) Similarly, Spolar, the School District's HR Director, was not present at the *Loudermill* hearing (Am. Compl. ¶8), or the arbitration proceeding (Am. Compl. ¶12; Arb. Op. at 3-19). In addition, Singleton admits that Spolar notified him in writing on March 22, 2010 that his actions on February 12, 2010 would result in a five day suspension and described the actions for which he was being suspended. (Am. Compl. ¶10; Ex F to Compl., ECF No. 1-7.) On March 30, 2010, Singleton admits that Splar notified him in writing that his five day suspension was being converted to a recommendation for termination. (Ex. G to Compl., ECF No. 1-8.) It is also undisputed that in written correspondence dated April 7, 2010, Spolar informed Singleton that he would have the opportunity to present any relevant information regarding his proposed termination for the consideration of the arbitrator. (Ex. H to Compl., ECF No. 1-8 at 4.) These undisputed facts show that contrary to Singleton's claim in Count B, Spolar did take action by informing him in writing, on two occasions prior to his termination, of the reason for his initial suspension and ultimate termination, and informed him that he would have an opportunity to present his side of the story at the arbitration proceeding. In fact, Singleton did appear at the arbitration proceeding with counsel, and presented testimony, cross-examined the School District's witnesses, and through counsel, argued his positions to the Arbitrator. In light of these facts, the Court finds that Singleton has failed to allege a plausible claim for violation of his due process rights against either Defendant Scott or Defendant Spolar. Accordingly, the Court

recommends that Count B against Defendant Scott and Defendant Spolar be dismissed with prejudice.[14]

### c. Count C - The Arbitrator's Decision Fails To Draw Its Essence From The Parties' Collective Bargaining Agreement Imposing Her Own Brand Of Justice

Initially, in Count C, Singleton sets forth what he believes to be infirmities and/or improprieties with the Arbitrator's decision and handling of the arbitration proceedings. (Am. Compl. ¶18.) However, the District Court has already dismissed this part of Count C as it pertains to the Arbitrator (*see* ECF No. 70), and thus, the Court will not revisit that claim here. Moreover, in paragraphs 20 and 24, Singleton again asks this Court to review the Arbitrator's decision, contending that the decision to terminate him violates a clearly articulated public policy, as defined by the public policy exception to the essence test, established by *Westmoreland Intermediate Unit #7 v. Westmoreland Intermediate Unit #7 Classroom Assistants Educ. Support Personnel Ass'n, PSEA/NEA*, 939 A.2d 855 (Pa. 2007), and determine whether or not Defendants rationally derived the decision to terminate him from the CBA. (Am. Compl. ¶¶20 & 24.) However, as Defendants argue in their briefs, the "essence test" and any applicable exceptions thereto, are the standards to be applied by the court of common pleas and state appellate courts in reviewing the decision of the arbitrator. Because this Court lacks the

---

[14] Also indicative that Singleton has failed to state a plausible claim for violation of his procedural due process rights is his request for relief. In Count B, Singleton requests that this Court order the School District to reinstate him and award all back pay and benefits to which he is entitled. (*Id.*, ECF No. 73 at 10.) In support, Singleton cites Article 11, Section 7 of the CBA (Singleton actually cites to Article 2, Section 7 but it is clear from the quoted language in his Amended Complaint that he is actually referring to Article 11, Section 7 of the CBA), which provides, in essence, that when any paraprofessional is found to have been discharged unjustly, he shall be reinstated with full compensation for all lost time and with full restoration of all other rights and conditions of employment. *See* CBA at 22 (ECF No. 78-1 at 12). Even if Count B could be construed to state a Section 1983 claim, the Court could not order the relief sought by Plaintiff for a violation of his due process rights. At most, the relief that could be ordered is that

authority to review and/or vacate the Arbitrator's decision,[15] similarly, it may not decide whether the decision to terminate him violated a clearly articulated public policy or was rationally derived from the CBA. The authority for making those determinations is vested exclusively in the Pennsylvania courts of common pleas. *Scranton Sch. Dist.,* 402 A.2d at 1093 (citing 42 Pa. Cons. Stat. Ann. §933(b) & (c)). Therefore, Singleton's reliance on *Westmoreland Intermediate Unit #7* is misplaced.

Next, with regard to the School District Defendants and Fadzen, Singleton alleges in Count C that the School Board's basis for terminating him was for violating 18 Pa. Cons. Ann. §912, and Fadzen "erred by citing this basis for recommending his termination and intentionally changed the reason for termination at arbitration to 'threatening fellow officers and pointing a gun' when Fadzen learned he would not be able to charge him with a crime under §912." (Am. Compl. ¶18, ECF No. 73 at 11.) Singleton further alleges that the fact Fadzen changed the reason for his termination at arbitration and conspired with others to support the new theory shows he knew he did not have a sufficient reason to discharge him for just cause and had to create one after recommending his termination to the School Board. (*Id.*) Singleton further alleges that by presenting a new reason for his termination at this point of the grievance process, the process continued to be fundamentally unfair. (*Id.*, ECF No. 73 at 11-12.) Singleton contends that he was not notified of the witnesses and specific charges of threatening fellow officers with a firearm presented at the arbitration process, and that he was denied the opportunity to be present or present evidence and arguments at the School Board meeting that resulted in his termination. (*Id.*, ECF No. 73 at 12.) Singleton further contends that he was not

---

the School District provide him with a grievance process that complies with due process.
[15] This Court has already addressed this issue with regard to the Arbitrator and found it unavailing. *See* Report and Recommendation (ECF No. 64) at 12 n. 7.

permitted to rebut his adversary's evidence and arguments to the School Board or when Defendants changed the reason for termination at the arbitration proceedings held on 8/16/10 and 9/1/10, almost seven months after his suspension. (*Id.*)

The Court finds that these allegations do not show or suggest a plausible claim for violation of Singleton's due process rights. The CBA, which governs the procedure to be followed in terminating paraprofessional employees such as Singleton, does not provide Singleton with the right to appear before the School Board, but rather, sets forth detailed, multi-level grievance and arbitration procedures (*see* CBA, Art. 8), of which Singleton fully availed himself, as well as the due process to which employees are entitled in disciplinary actions (*see* CBA, Art. 11). Particularly relevant to the case at bar are paragraphs 5 and 6 of Article 11 of the CBA, which provides:

> 5. The Board shall not discharge any paraprofessional without just cause. If in any case the Board feels there is just cause for an actual discharge, the paraprofessional involved will first be suspended without pay for five (5) school days. A written notice of the nature and grounds for the suspension and intended discharge will be mailed to the paraprofessional employee within twenty-four (24) hours of the suspension. A copy of this written notice will be forwarded simultaneously to the Federation. At the request of the Federation a hearing will be held on the proposed discharge, such hearing to be held within the time period of the five (5) school day suspension. Within three (3) school days after the hearing, the Board will notify the Federation whether the suspension is reversed, modified, sustained, or converted to a discharge.

> 6. Within five (5) school days after the receipt of the Board's decision, the Federation shall have the right to process a written grievance at the second level of the grievance procedure, and the matter shall be handled in accordance with this procedure, including arbitration if requested by either the Federation or the Board.

(Ex. A to Sch. Dist. Defs.' Br. in Supp. of Mot. to Dismiss, ECF No. 78-1 at 11-12.)[16]

Singleton does not allege, nor can he allege, that he did not receive the due process provided for under the CBA.[17]   Indeed, as noted above, the documents attached to the original Complaint show that Singleton was given the notice provided for in the CBA, *see* Exhibits F, G & H to Complaint (ECF Nos. 1-7 to 1-8), and a *Loudermill* hearing was held as required under paragraph 5 of the CBA on February 26, 2010, at which time Singleton was notified of the reason Fadzen was recommending his termination, *see* Amended Complaint, ¶8.   After being notified on March 30, 2010 that his suspension was being converted to a recommendation of dismissal, Singleton filed a grievance and requested an arbitration hearing, which was held on August 16, 2010 and September 1, 2010, after the School Board had terminated his employment. Singleton appeared at the arbitration proceeding and offered testimony, along with his counsel who cross-examined the School District's witnesses and objected to the proffered testimony by Defendant Fadzen, who stated a different reason for recommending Singleton's termination at the arbitration proceeding than previously asserted; however, the Arbitrator overruled the objection[18] and upheld the School Board's decision to terminate Singleton for cause.   Based on

---

[16] The Court  may consider the CBA in deciding the motion to dismiss without converting it to a motion for summary judgment because Singleton refers to and quotes from the CBA throughout his Amended Complaint.

[17] Singleton does not challenge the constitutionality of the due process provided in Article 11 of the CBA.  Instead, Singleton complains that by allowing Defendants to testify as to a new reason for his termination for the first time at the arbitration hearing, the process was fundamentally unfair.

[18] The Court notes the provision in Article 8, ¶12 of the CBA, which states:  "No arguments or facts may be introduced at an arbitration proceeding unless they have been presented at some previous level of this grievance procedure, or unless they were not reasonably available to the parties prior to the arbitration."  Singleton contends that based on this provision, the arbitration proceeding was fundamentally unfair because the Arbitrator allowed Fadzen to testify as to the reason for termination which differed from the one previously given.  However, Singleton's counsel objected to the introduction of this evidence at the arbitration proceeding, to no avail.  If Singleton was dissatisfied with the Arbitrator's decision, including the ruling as to the admission

28

these facts, the Court finds, as a matter of law, that Singleton received all the process to which he was due under *Loudermill* and *Matthews*.[19]

Also in paragraph 18, Singleton cites two cases—one from South Carolina[20] and the other from Michigan[21]—neither of which is binding on this Court, to support his position that the offense was not serious enough to justify his discharge. His reliance on these cases is misplaced, however, because resolution of that issue requires the Court to review and vacate the Arbitrator's decision, which this Court lacks the authority to do.

In paragraph 19 of the Complaint, Plaintiff alleges that the School District and Spolar, like the defendant employer in *Haywood v. University of Pittsburgh*,[22] "fail[ed] to investigate this matter thoroughly and afford [him] the opportunity to present evidence and arguments to the charges against him." (Compl. ¶19, ECF No. 73 at 14.) It is clear from a review of the docket in

---

of this evidence, his only recourse was to appeal to the court of common pleas, which has exclusive jurisdiction to review an arbitrator's award. *Scranton Sch. Dist.,* 402 A.2d at 1093. Because the Union declined to appeal the award, Singleton's petition to vacate the arbitrator's award was quashed, thus effectively foreclosing his ability to appeal the arbitrator's decision. Unfortunately for Singleton, he is bound by the CBA and the Court is bound to follow the law.

[19] The Court does not find persuasive *Renny v. Port Huron Hospital,* 398 N.W. 2d 327 (Mich. 1986), which Singleton cites in support of his claim that the grievance procedure was fundamentally unfair. First, *Renny* in not binding on this Court as it involved application of Michigan law to a wrongful discharge action against a private employer. Second, is distinguishable factually from the case at bar as it did not involve a CBA and, unlike the plaintiff in *Renny*, Singleton was notified of the witnesses and charges, allowed an opportunity to present evidence, and was present at both the *Loudermill* and arbitration hearings.

[20] *Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E. 2d 452 (1987) (breach of contract case applying South Carolina law).

[21] *Ritchie v. Mich. Consol. Gas Co.,* 163 Mich. App. 358, 413 N.W. 2d 796 (1987) (wrongful discharge case applying Michigan law).

[22] The only information Singleton provides for this case is that it is a 2011 case from the Western District of Pennsylvania. A search of the docket in this district revealed that the *Haywood* case is docketed at 2:11-cv-1200, and is currently open with summary judgment motions pending. The only opinion filed in that case on a dispositive motion so far was docketed on February 22, 2012 at ECF No. 24 on defendant's partial motion to dismiss the plaintiff's 14th Amendment procedural due process claim. The court granted the motion finding that plaintiff did not possess a protected property interest under the Constitution. *See* Civ. A. 2:11-cv-1200, ECF No. 24 at 8.

the *Haywood* case that Singleton is relying on the allegations in the complaint, not a decision of the district court. Indeed, the only decision filed in that case on a dispositive motion was docketed on February 22, 2012 at ECF No. 24 on defendant's partial motion to dismiss the plaintiff's Fourteenth Amendment procedural due process claim. The court granted the motion finding that Haywood did not possess a protected property interest under the Constitution. *See* Civ. A. 2:11-cv-1200, ECF No. 24 at 8. Moreover, as noted above, Singleton's Amended Complaint and the exhibits attached to the original Complaint belie his allegation that the School District and Spolar failed to investigate the incident or afford him the opportunity to present evidence and arguments to the charges against him.

Singleton further alleges that prior to suspension or termination, he did not receive any other form of discipline, training, verbal or written reprimands with regard to possessing licensed weapons in his personal vehicle. (Am. Compl. ¶19, ECF No. 73 at 14.) Instead of providing training to him, Plaintiff contends that the School District and Spolar "chose to listen to an erroneous charge by Fadzen, Scott, Borgini, McClelland and Seig to pursue a termination without cause." (*Id.*) These allegations do not implicate a violation of Singleton's procedural due process rights and, in any event, Fadzen, Borgini, McClelland and Seig have absolute witness immunity for their testimony at the arbitration proceeding, even if it was false.

For the reasons set forth above, the Court finds that Singleton has failed to state a plausible claim for a violation of his procedural due process rights in Count C against the School District Defendants and Fadzen. Accordingly, the Court recommends that the due process claim in Count C be dismissed with prejudice as to these Defendants.

### 3. Section 1983 Conspiracy Claim

Singleton intersperses throughout his Amended Complaint several conclusory allegations

of a conspiracy. For example, Singleton alleges that Fadzen conspired with the School District Defendants to terminate him without cause through conspiracy and a fraudulent arbitration process and, as a result, he was "denied his civil rights and right to due process" by the School District Defendants. (Am. Compl. ¶12.) Singleton also alleges that "Defendants chose to conspire by utilizing a person who was not associated with AAA, but a friend or associate of Attorney Lalley." (Am. Compl. ¶16.) In addition, Singleton also asserts that Fadzen seized a weapon without a warrant and without contacting a City of Pittsburgh Police Officer, which conduct was "willful, malicious, and shows . . . a conscious effort to conspire with other defendants because of his animosity against [him] and failing a previous attempt to terminate [him] for being in a car accident." (Am. Compl. ¶18, ECF No. 73 at 12.) However, his conclusory, bare bones allegations of a conspiracy are insufficient to state a plausible claim of a Section 1983 conspiracy to deprive him of due process.

In support of dismissal, Fadzen argues that Singleton failed to allege facts to support the existence of an agreement or understanding between Fadzen and any other Defendants to conspire to bring about his termination. In any event, Fadzen submits that he has absolute witness immunity for the alleged false statements during the arbitration hearing, including any conspiracy to so act. The Court finds that Fadzen's arguments have merit.

In order to survive a motion to dismiss a conspiracy claim, a plaintiff must set forth in the complaint some factual basis to support the elements of a conspiracy, which are: (1) an actual agreement among the co-conspirators or "'meeting of the minds,'" and (2) concerted action. *Demetro v. Police Dep't, City of Cherry Hill,* 2011 WL 5873063, *16 (D.N.J. Nov. 22, 2011) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir.2008) (quoting *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 158 (1970)); *Capogrosso v. The Supreme Court of New Jersey,* 588

F.3d 180, 184-85 (3d Cir. 2009))). *See also Goodson v. Maggi,* 797 F.Supp. 2d 624, 639 (W.D.Pa. 2011) (citations omitted) ("Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators."). In the case at bar, Singleton's allegations of a conspiracy fall short of suggesting a meeting of the minds between the School District Defendants, Fadzen and the other dismissed Defendants to deprive him of a constitutional right.

Moreover, even if Singleton could plead facts to show an actual agreement among co-conspirators and concerted action, Singleton's conspiracy claim would still fail. Under the intracorporate conspiracy doctrine, an employer cannot conspire with its employees, so long as the employees are acting within the course and scope of their employment. *Parker v. Learn The Skills Corp.,* 219 F. App'x 187, 189-90 (3d Cir. 2007) (citing *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 313-14 (3d Cir. 2003)). *See also Lopez v. Maczko,* No. 07–1382, 2007 U.S. Dist. LEXIS 63416, at *22 (E.D.Pa. Aug. 16, 2007) (quoting *Tarlecki v. Mercy Fitzgerald Hosp.*, No. 01–1347, 2002 U.S. Dist LEXIS 12937, at *20 (E.D.Pa. July 15, 2002)) ("In a § 1983 claim, employees of a municipal police department, acting in their official capacities, are part of the same entity and therefore cannot be charged with civil conspiracy because an entity cannot conspire with itself.") Here, to the extent that Singleton has alleged that the School District Defendants and Fadzen were acting in their official capacities when they engaged in the alleged conduct, the conspiracy claim against them fails as a matter of law.

To the extent Singleton predicates his conspiracy claim against the School District Defendants and Fadzen on their alleged false statements at the arbitration hearing, they have absolute witness immunity for their testimony at the arbitration proceeding, even if it was false,

and for conspiring to do so. Thus, the Court recommends that the Section 1983 conspiracy claim be dismissed with prejudice as to all Defendants.

### 4. Title VII Claim Against the School District

Also, although not formally pled, the allegations in the Amended Complaint suggest that Singleton is attempting to assert Title VII claims for hostile work environment and disparate treatment based on race. Under Title VII, "it shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In order to bring a Title VII action in federal court, a plaintiff must first exhaust all administrative remedies. *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157, 163 (3d Cir. 2013) (citation omitted). In a deferral state such as Pennsylvania, that means that the plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice and obtain a notice of the right to sue from the EEOC before filing suit in federal court on such claims. *Id.* at 163 & 165.

The School District argues that Singleton has not asserted any allegations or otherwise demonstrated that he has exhausted his administrative remedies. The School District is correct in this regard. Moreover, Singleton did not attach a copy of his charge of discrimination with the EEOC to either his original Complaint or Amended Complaint, nor was it included with Plaintiff's exhibits subsequently filed and docketed at ECF No. 4. Singleton did, however, attach a right to sue letter, which leads the Court to believe that he did pursue some sort of discrimination claim administratively. Therefore, in light of his pro se status, the Court finds that Singleton should be allowed leave to amend his complaint to show that he exhausted his

administrative remedies as to any discrimination claims.[23]

To establish a hostile work environment claim based on race, a plaintiff must show that: "(1) [he] suffered intentional discrimination because of h[is] race; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected h[im]; (4) the discrimination would have detrimentally affected a reasonable person of the same race in h[is] position; and (5) the existence of *respondeat superior* liability. *Peace-Wickham v. Walls,* 409 F. App'x 512, 518-19 (3d Cir. 2010) (citing *Jensen v. Potter*, 435 F.3d 444, 448 (3d Cir.2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Caver v. City of Trenton,* 420 F.3d 243, 262 (3d Cir. 2005)). Moreover, in order to have a cognizable claim for a hostile work environment, the racial harassment "must affect a term, condition, or privilege' or the plaintiff's employment." *West v. Phila. Elec. Co.,* 45 F.3d 744, 753 (3d Cir. 1995), *abrogated on other grounds as stated in Mandel,* 706 F.3d at 166-67.

In paragraph 4 of his Amended Complaint, Singleton sets forth allegations which may establish *some* of the required elements of a hostile work environment claim. In particular, Singleton alleges that during his employment with the School District, he "has endured a hostile working environment. This included listening to racial derogatory comments directed towards him and witnessing such comments directed towards other African-Americans, including students, parents, teachers, administrators, and community members, . . . by fellow school police officers and school safety chief Robert Fadzen." (Am. Compl. ¶4.) Singleton further alleges that

---

[23] This Court recognizes that the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). At this juncture, it does not appear that it would be either futile or inequitable to allow Plaintiff one last opportunity to amend his complaint as to the discrimination claims.

he witnessed Fadzen, fellow school police officers, teachers and administrators making false charges and false reports against African-American students and their parents. (*Id.*) Singleton also alleges that he witnessed white male school police officers engaging in physical violence towards African-American students, some of whom were female elementary school students. (*Id.*)

In support of dismissal, the School District submits that at best, these allegations allow this Court to only speculate that relief may be appropriate in that there may be a "mere possibility" of misconduct. Thus, the School District argues, that these allegations are insufficient under *Twombly* and *Iqbal*, and therefore, the hostile work environment claim should be dismissed with prejudice.

The Court agrees with the School District that the above allegations are insufficient to state a plausible hostile work environment claim. Singleton has not alleged Fadzen's race, when the alleged harassment occurred, if or how his employment was detrimentally affected by this alleged harassment, or whether the School District was aware of the alleged harassing conduct and what, if any, corrective action was taken. Accordingly, the Court recommends that the hostile work environment claim be dismissed without prejudice, and that Singleton be granted leave to amend his complaint to plead additional facts in support of his hostile work environment claim.

To establish a *prima facie* case of race discrimination under Title VII based on disparate treatment, the plaintiff must show that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment action; and (4) members outside the protected class were treated more favorably. *Jones v. Sch. Dist. of Phila.,* 198 F.3d 403, 410-11 (3d Cir. 1999). The fourth factor may be satisfied by identifying similarly situated individuals

outside of the protected class who engaged in the same conduct but were treated more favorably. *Mandel,* 706 F.3d at 170 (citing *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 358-59 (3d Cir. 1999)).

In paragraph 18 of his Amended Complaint, Singleton sets forth allegations suggesting a plausible disparate treatment claim. In that regard, Singleton alleges that Fadzen and other school police officers have conducted gun sales on school property and carried firearms in school vehicles, and Officer Seig had guns stolen from her personal vehicle at the same Ridge Avenue Parking facility without receiving any disciplinary action. Singleton contends he was punished more harshly than Seig for the same conduct, possessing a weapon in a personal vehicle on non-school grounds. Singleton further contends that it was a regular practice for other school officers and the school safety chief to carry firearms on their person and school vehicles. Singleton alleges that School Officer McClelland possessed a firearm on school grounds in her personal vehicle on a daily basis at Peabody High School, while he only possessed a weapon inside of a personal vehicle while on non-school grounds. (Am. Compl. ¶18, ECF No. 73 at 12-13.) Singleton further alleges that he did not receive any training from the School District regarding the possession of licensed firearms in personal vehicles either at the time of his hiring or at any time throughout his employment, nor was he provided with any orientation at the time of hire. (*Id.*, ECF No. 73 at 12.) Singleton contends that the School District did not have any policies in existence regarding licensed firearms in personal vehicles for employees on non-school grounds. (*Id.*, ECF No. 73 at 13.) However, Singleton does not allege the race of the other officers who were treated more favorably than he, and it is not clear whether his charge of discrimination with the EEOC included a race discrimination claim. Therefore, the Court recommends that disparate treatment claim of race discrimination be dismissed without prejudice, and Singleton be given

leave to amend his complaint to plead additional facts in support of his disparate treatment claim.

The Court finds that in light of his pro se status, Singleton should be given leave to file a second amended complaint to assert only discriminations against the School District, in order to cure the deficiencies noted above, but only if he can show that he previously asserted these claims before the EEOC.  In addition, Singleton should include in the second amended complaint factual allegations to show or suggest the required elements of these claims, and he should attach to the second amended complaint his charge of discrimination with the EEOC to show that he has exhausted his administrative remedies with regard to the discrimination claims asserted therein.[24]

### 5.  Defamation Claim Against Fadzen

In Count B, Singleton also alleges facts suggesting a possible defamation claim against Fadzen.  Singleton contends that on November 17, 2010, he learned from Pittsburgh Police Commander George Trosky of Zone 2 that Fadzen allegedly told Trosky that Singleton threatened fellow officers and pointed a gun, all the while knowing this statement was false, thus defaming Singleton's character in the community.  (Compl. ¶17, ECF No. 1 at 10.)  Singleton further alleges that he has been approached by other members of the Pittsburgh community who told him that Fadzen is communicating that Singleton pointed a gun and threatened school police officers while on duty and is being charged with a crime.  (*Id.*, ECF No. 1 at 10-11.)  Singleton claims he has suffered emotional and mental pain, financial hardship, and health issues over the loss of his job and inability to afford medical treatment.  (*Id.*, ECF No. 1 at 11.)

Defendant Fadzen argues that because this claim sounds entirely in state law, the proper course is to dismiss it for lack of jurisdiction.  Although it appears that Singleton may have stated

---

[24] Singleton should also attach to his second amended complaint any other documents he wishes

a plausible claim for defamation under Pennsylvania law, this Court recommends that supplemental jurisdiction should not be exercised over that claim.

Under 28 U.S.C. §1367(a), federal courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In other words, federal courts may constitutionally exercise supplemental jurisdiction over state law claims "when the state and federal claims derive from a common nucleus of operative fact, such that the plaintiff would ordinarily be expected to try them all in one judicial proceeding." *Sparks v. Hershey,* 661 F.2d 30, 33 (3d Cir. 1981) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966)). A federal court may, in its discretion, decline to exercise jurisdiction over pendent state law claims in four circumstances. 28 U.S.C. §1367(c). The one circumstance relevant here is when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(3). This is also true where, as here, all federal claims against certain defendants have been dismissed leaving only a pendent state law claim against them, which lacks a common nucleus with the remaining federal claims against the other defendants. *See Kis v. County of Schuylkill,* 866 F.Supp. 1462, 1480 (E.D.Pa. 1994).

Because this Court is recommending that the federal Section 1983 claim against Fadzen be dismissed with prejudice, the Court believes that supplemental jurisdiction should not be exercised over the state common law defamation claim, as the only federal claims allowed to be asserted in the second amended complaint are discrimination claims against the School District. The discrimination claims do not share a common nucleus of operative facts with the state law claim for defamation against Fadzen. Accordingly, the Court recommends that to the extent the

---

the Court to consider in support of his second amended complaint.

Amended Complaint can be read to assert a defamation claim against Fadzen, that claim be dismissed without prejudice so that Plaintiff may refile that claim in state court should he so desire (provided the statute of limitations had not expired at the time he filed this federal lawsuit).

###    D.    CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants Pittsburgh Public School District, Dante Borgini, Latisha Cassidy McClelland, Kenneth Scott, Margaret Seig, and Jody Spolar pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 77) be granted with prejudice as to all claims except Plaintiff's claims for disparate treatment and hostile work environment against the School District, which the Court recommends be dismissed without prejudice.  It is further recommending that Plaintiff be granted leave to amend his complaint to set forth sufficient facts to state plausible claims for disparate treatment and a hostile work environment against the School District, including facts to show he exhausted his administrative remedies.

It is further recommended that the Motion to Dismiss filed by Defendant Robert Fadzen pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 75) be granted with prejudice as to all claims except the state law claim for defamation.  It is further recommended that the Court refrain from exercising supplemental jurisdiction over the state law defamation claim and grant Defendant Fadzen's motion to dismiss without prejudice as to the defamation claim, so that Plaintiff may file such a claim, should he so desire, in state court.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the

objections shall have fourteen (14) days from the date of service of objections to respond thereto.

Failure to file timely objections will constitute a waiver of any appellate rights.

May 24, 2013                                        BY THE COURT:

                                                    _____
                                                    LISA PUPO LENIHAN
                                                    Chief United States Magistrate Judge

cc:        All Counsel of Record
           *Via Electronic Mail*

           Gerald Singleton, *Pro Se Plaintiff*
           5514 Stanton Ave., #4
           Pittsburgh, PA 15206
           *Via First Class, U.S. Mail*